

FILED

APR 1 6 2020

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| LOWELL LUNDSTROM JR., | 1:19-CV-01006-CBK |
| Plaintiff, | |
| vs. | |
| DANIEL M. HOMOLKA P.A., DANIEL M. HOMOLKA, WATTS GUERRA LLP, MIKAL C. WATTS, | MEMORANDUM OPINION AND ORDER |
| Defendants. | |

This matter is before the Court on the motion to dismiss counts two, three, and four of plaintiff's complaint, as well as the request for punitive damages, for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), Doc. 21, filed by defendants Mikal C. Watts and Watts Guerra LLP.

## FACTS

This matter arose out of an alleged agreement between plaintiff Lowell Lundstrom, Jr. and defendants Mikal Watts and Daniel Homolka and their respective law firms, Watts Guerra LLP and Daniel M. Homolka, P.A. The agreement involved a potential class action lawsuit that all defendants sought to file against Syngenta Agrochemical Company ("Syngenta"), a global company that produces agrochemicals and seeds. According to allegations in the complaint, an attorney named Daniel Ramus introduced plaintiff to defendant Homolka in 2014. Doc. 1 at 7. Plaintiff claims that defendant Homolka then introduced him to defendant Watts. Id. The purpose of these introductions was for defendants Watts and Homolka to determine whether to hire plaintiff to market the Syngenta lawsuit to potential plaintiff farmers. Id.

Sometime thereafter, defendants Watts and Homolka agreed to engage plaintiff to conduct advertising and marketing activities for the Syngenta lawsuit. According to the

complaint, plaintiff requested $10,000.00 per month to lease his domain name, LostCornIncome.com, and to build a website around the domain name. Id. at 8. Plaintiff also claims that he agreed to engage in a host of other marketing related activities in exchange for further compensation. Plaintiff agreed to make all media buys (with funding defendants would provide), operationalize the strategic acquisition plan, create advertising collateral, and manage the infield operations for the local town hall meetings. Id. Plaintiff claims that the compensation he was promised to conduct these further activities was a "lump sum bonus" of $3.4 million to be paid only if the marketing efforts were successful enough to recruit a plaintiff class representing six million acres of farmland. Id.

Plaintiff claims that defendants Watts and Homolka orally agreed to both forms of compensation. Plaintiff further claims that when asked by him to reduce the agreement to writing, defendants Watts and Homolka refused on the grounds that it would violate Rule 5.4 of the Rules of Professional Conduct. Id. The Rules of Professional Conduct are the official legal ethics rules in many jurisdictions around the country. Rule 5.4(a) specifically states that "[a] lawyer or law firm shall not share legal fees with a nonlawyer..." Rule 5.4: Professional Independence of a Lawyer, American Bar Association, americanbar.org.

After this point, plaintiff alleges that he agreed to market the Syngenta lawsuits and proceeded to do so. According to the complaint, this was a large effort that included creating an overall marketing strategy, establishing and maintaining a web domain (lostcornincome.com), producing a 30-minute long infomercial ("LOST CORN INCOME: Special Report"), arranging and managing a toll-free phone number for prospective clients to call, managing all media buys (for formats including radio, newspapers, and television), preparing fact sheets to give prospective clients, and preparing budgets for all of the above. Id. at 9.

Plaintiff claims that he relied on defendants to pay him the $3.4 million bonus if his work was successful. Plaintiff claims that he dropped other such marketing clients in favor of defendants, purchased a truck, and engaged in all of this marketing activity

2

without compensation.  Plaintiff claims that all moneys paid for the lease of his domain name were for that purpose only.  All of the other marketing work performed by him was in anticipation of receiving the $3.4 million bonus if he met his marketing goals.

Plaintiff has brought four causes of action against all defendants: (1) breach of contract; (2) fraudulent misrepresentation; (3) unjust enrichment; and (4) civil conspiracy.  In this motion, defendants seek to dismiss counts two, three, and four for failure to state a claim upon which relief can be granted.

Defendants argue that plaintiff has failed to properly plead fraudulent misrepresentation because he has failed to allege the facts of the fraud with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure.  Plaintiff responds that his claims are sufficiently particular to satisfy Rule 9(b) at this early stage of the litigation.  Defendants further allege that plaintiff has not claimed that he detrimentally relied on defendants allegedly fraudulent statements.  Defendants argue that plaintiff has not sufficiently alleged how his entering into an oral, rather than a written, contract has caused plaintiff any harm.

Plaintiff responds that he has pled sufficient facts for defendants to be fully informed of the allegations against them and to answer those allegations.

Defendants next argue that count three should be dismissed because damages for unjust enrichment cannot be recovered when there is a valid contract claim.  A recovery for unjust enrichment cannot be had when there is a contract between the parties that contemplates the alleged benefit received by the defendant.  Essentially, defendants argue that unjust enrichment and breach of contract are alternative claims that cannot coexist in the same lawsuit.

Plaintiff disagrees, arguing that he is entitled to bring an equitable cause of action as an alternative to his contract claim.

Defendants last argue that count four must be dismissed because plaintiff has not alleged facts showing that a civil conspiracy existed between defendants Watts and Homolka.  In short, defendants argue that conspiracy requires an underlying tort, and that

3

because plaintiff's underlying tort, his fraud claim, cannot be maintained, the civil conspiracy claim must fall with it.

Plaintiff argues that the fraud claim should not be dismissed and, thus, there is no lack of a valid underlying tort for the conspiracy claim.

## LEGAL STANDARD

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court assumes that all facts in the complaint are true and construes any reasonable inferences from those facts in the light most favorable to the nonmoving party. Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008). To decide the motion, the court may consider the complaint, some materials that are part of the public record, or materials embraced by the complaint. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir.1999). To survive the motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . ." Id. at 555. The factual contents of the complaint must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Braden v. Walmart Stores, 588 F.3d 585, 594 (8th Cir.2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

That said, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). When evaluating a motion to dismiss under Rule 12(b)(6), a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. All legal conclusions must be supported by plausible factual allegations to survive a motion to dismiss under Rule 12(b)(6). Id.

## DISCUSSION

### I.

As an initial matter, defendants argue that this case should revolve solely around the breach of contract claim. However, a fraud claim may properly be brought along with a valid breach of contract claim under South Dakota law. "It may be conceded that

4

tort usually signifies a breach of legal duty independent from contract. But such breach of duty may arise out of a relation or state of facts created by contract." Hoffman v. Louis Dreyfus Corp., 435 N.W.2d 211, 214 (S.D. 1989), quoting Smith v. Weber, 16 N.W.2d 537, 539 (S.D. 1944). Thus, just because parties have a contract between them does not mean that one cannot separately defraud the other.

Defendants' first argument is that the fraudulent misrepresentation claim must fail because plaintiff has failed to overcome Federal Rule of Civil Procedure 9(b) by alleging the facts of the fraudulent misrepresentation claim with sufficient particularity.

Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). In order to satisfy Rule 9(b), a pleading must specify "such matters as the time, place and contents of the false representations, as well as the identity of the person making the misrepresentations and what was obtained or given up thereby." Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001). "Put another way, the complaint must identify the 'who, what, where, when, and how' of the alleged fraud." U.S. ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006) (quoting United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir. 2003)). However, that does not mean that a plaintiff need allege the facts "with complete insight before discovery is complete." Gunderson v. ADM Investor Servs., Inc., 230 F.3d 1363 (8th Cir. 2000) (quoting Maldonado v. Dominguez, 137 F.3d 1, 9 (1st Cir. 1998)). "The special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." Abels, 259 F.3d at 920.

Defendants argue that Rule 9(b) was not satisfied in this case because the complaint did not specifically allege which of the four defendants made the supposed fraudulent statements, nor where they were at the time, nor the specific time the

statements were made. While it is true that this complaint walks a fine line, this court finds that it satisfies Rule 9(b) under the particular facts and circumstances as alleged.

Reading the complaint in the light most favorable to the nonmoving party; plaintiff is alleging that both human defendants, defendants Watts and Homolka, made the statement in question. The fact that plaintiff is also alleging conspiracy based on the fraudulent misrepresentation claim buttresses this reading of the complaint. The 'where' of the alleged fraud is also simple enough, in a general sense. The statements were made during the meeting or meetings among defendants Watts, Homolka, and plaintiff when they were negotiating working with plaintiff to market the Syngenta lawsuits. These meetings seem to have taken place in defendant Homolka's law office in Minneapolis, Minnesota. The 'when' of the alleged fraud is less clear; it would seem from the complaint that plaintiff was initially told that the agreement should not be in writing at one point in time, and then again at a later point after plaintiff had performed some research on the subject of Rule 5.4 of the Rules of Professional Conduct. While it is clear that the statements were allegedly made in 2014, particular dates are omitted.

In many cases, plaintiff's complaint would not satisfy Rule 9(b). However, the facts as alleged in the instant complaint are so outrageous, simple, and straight forward that defendants should certainly be able to "respond specifically, at an early stage of the case." Abels, 259 F.3d at 920. There is only one assertion that plaintiff alleges was fraudulent: the alleged assertion by defendants that the agreement to pay plaintiff a bonus if the case was successful could not be in writing. While the vast majority of American jurisdictions have adopted some version of the statute of frauds requiring certain types of contracts be in writing to be enforceable, there does not exist a contract that would be valid if oral but would be illegal or unethical if written. Considering the fact that defendants Watts and Homolka are both attorneys, they would know that any statements to the contrary were false and, frankly, absurd. If an attorney made a statement asserting that a contract of a particular nature could only be made orally, it would be beyond the pale for them to claim that they did not remember doing so. No reasonable attorney could do anything other than affirm or deny that they made such a statement.

6

In addition to the striking nature of the statement at issue, and the fact of defendants Watts and Homolka's status as attorneys, there is the additional context of the negotiation to enter into a significant working relationship with plaintiff. If plaintiff's allegations concerning the amount of work he did to market the Syngenta lawsuits are true, then defendants were interviewing him for a very sizable and important undertaking. If in that context, defendants Watts and Homolka were to state that the compensation for all of that work could only be properly secured to plaintiff via an oral contract due to the rules of legal ethics, they ought to remember it. Indeed, it is even difficult to imagine that defendants Watts and Homolka could have made such a statement in good conscience.

Thus, given the striking and simple nature of the alleged fraud, the Court finds that defendants have enough information to specifically respond to the complaint. Defendants Watts and Homolka either represented to plaintiff that his contract could not ethically or legally be put into writing or they did not.

Finally, defendants argue that plaintiff has not shown how he relied on the alleged fraudulent representations to his detriment. Essentially, defendants argue that under the facts of the complaint the only thing that plaintiff was deprived of by the alleged fraudulent misrepresentations was a written contract. Defendants assert that since an oral contract of this nature may be enforced, an oral contract is as good as a written one. Thus, as plaintiff claims to have an oral contract, he has not been harmed. The Court disagrees.

South Dakota's civil fraud statute states that "[o]ne who willfully deceives another, with intent to induce him to alter his position to his injury or *risk*, is liable for any damage which he thereby suffers." SDCL 20-10-1 (emphasis added). Assuming without deciding that the facts as alleged in the complaint raise a valid oral contract between plaintiff and defendants, that does not mean plaintiff did not alter his position to his detriment by entering into an oral contract. All other things being equal, a person with an oral contract is in a worse position than a person with a written contract in terms of enforceability. Indeed, the terms of the contract may still be disputed and, without a written agreement laying out those terms, plaintiff's risk of nonrecovery under those

7

terms is increased. Without a written agreement it will undoubtedly be much more difficult for plaintiff to prove that defendants Watts and Homolka agreed to pay him a $3.4 million bonus under the alleged terms. Thus, construing all reasonable allegation in the complaint in favor of plaintiff, he has sufficiently alleged harm for the purposes of Rule 9(b).

As for plaintiff's detrimental reliance, it is clear from the alleged facts that plaintiff claims to have forgone a written contract because defendants Watts and Homolka represented to him that an oral contract could not be made between them. That is, if plaintiff wanted the job with the compensation terms set in the manner of a bonus, he would have to settle for an oral contract. Plaintiff claims that he relied on defendants' assurances that they would pay him the bonus if his work was successful, and that based on those assurances he performed a great deal of presently uncompensated marketing work for them. That suffices to show detrimental reliance at this stage of the litigation.

II.

Defendants next argue that plaintiff cannot maintain a claim for unjust enrichment because he alleges that there is a valid express contract between the parties.

> The courts recognize two classes of implied contracts. The one is implied in fact and the other implied in law. Mahan v. Mahan, S.D., 121 N.W.2d 367. Those falling within the second classification generally referred to as quasi or constructive contracts do not arise because of a manifestation of an intention to create them, but rest upon the equitable principle that a person shall not be permitted to enrich himself unjustly at the expense of another.

Thurston v. Cedric Sanders Co., 125 N.W.2d 496, 498 (S.D. 1963).

Under South Dakota contract law, "where there is a valid express contract existing between parties in relation to a transaction fully fixing the rights of each, there is no room for an implied promise, or a suit on *quantum meruit*." Id. Essentially, when the court finds a valid contract exists between the parties and that said contract contemplates the conduct at issue in the unjust enrichment claim, the unjust enrichment claim must fail.

In the instant case, the Court has yet to determine that there is a valid contract between the parties in this case. The rule above simply limits dual recovery; however, breach of contract and unjust enrichment may be properly brought together as alternative

8

theories of recovery. *See* <u>Parker v. W. Dakota Insurors, Inc.</u>, 605 N.W.2d 181, 187 (S.D. 2000) (After first finding that the plaintiff did not have a right to recover on a theory of contract, the South Dakota Supreme Court asked: "If Parker has no contractual right to the renewal commissions that First American sold to Western Dakota, does she have an actionable claim for unjust enrichment against Western Dakota?"); <u>W.J. Bachman Mech. Sheetmetal Co. v. Wal-Mart Real Estate Bus. Tr.</u>, 764 N.W.2d 722, 725 (S.D. 2009) ("A subcontractor sued a property owner seeking enforcement of a mechanic's lien, or *in the alternative*, a claim under the theory of unjust enrichment." (emphasis added)).

Plaintiff's unjust enrichment theory is an alternative theory of recovery to his breach of contract claim. While he may not recover for both on the same facts, he may bring both causes of action in the same case.

## III.

Lastly, defendants argue that plaintiff's civil conspiracy claim must fail because the underlying fraud claim must fail. As the fraud claim has been upheld above, defendants' argument is rejected.

> A civil conspiracy is, fundamentally, an agreement to commit a tort. To establish a prima facie case of civil conspiracy, the plaintiff must show: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy.

<u>Kirlin v. Halverson</u>, 758 N.W.2d 436, 455 (S.D. 2008). Defendants cite <u>Kirlin</u> in their brief supporting this motion. While plaintiff must indeed prove additional facts to properly make out a claim for civil conspiracy, he need not have all of those facts at this stage of the litigation—before any discovery has been conducted. The decision in <u>Kirlin</u> was based on a motion for summary judgment, meaning that discovery had already taken place. As plaintiff's claims of civil conspiracy are plausible when the facts alleged in the complaint are taken as true, the claim survives this motion to dismiss.

## IV.

Finally, defendants argue that punitive damages cannot be awarded in this case. "Punitive damages 'are not ordinarily recoverable in actions for breach of contract,

because, as a general rule, damages for breach of contract are limited to the pecuniary loss sustained." Grynberg v. Citation Oil & Gas Corp., 573 N.W.2d 493, 500 (S.D. 1997) (internal citations omitted). That said, the majority of jurisdictions, including South Dakota, allow punitive damages in breach of contract cases in the case of fraud. Id. "Punitive damages may arise in these situations when the complaining party can prove an independent tort that is separate and distinct from the breach of contract." Id. (citing Hoffman v. Louis Dreyfus Corp., 435 N.W.2d 211, 214 (S.D. 1989). That is, the tort of fraud cannot be committed "merely by breaching the contract." Id.

In the instant case, the fraud claim alleges facts beyond the breach of contract claim. The fraud claim revolves around plaintiff's assertions that defendants Mikal Watts and Daniel Homolka convinced him that a written contract could not be maintained under the circumstances, leaving plaintiff with only an oral contract to secure his rights under the agreement. Those facts are separate and apart from any claim for breach of the alleged oral contract between the parties. For that reason, punitive damages may properly be maintained in this action for breach of contract and fraudulent misrepresentation.

IT IS ORDERED that defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Doc. 21, is hereby DENIED.

DATED this 16th day of April, 2020.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge