

FILED
JUL 21 2020

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| LOWELL LUNDSTROM, JR., <br><br> Plaintiff, <br><br> vs. <br><br> DANIEL M. HOMOLKA, P.A., DANIEL M. HOMOLKA, WATTS GUERRA LLP, MIKAL C. WATTS, <br><br> Defendants. | 1:19-CV-01006-CBK <br><br><br> MEMORANDUM OPINION AND ORDER |

This matter is before the Court on defendants Daniel M. Homolka and Daniel M. Homoka P.A.'s motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for improper venue under Federal Rule of Civil Procedure 12(b)(3), Doc. 10.[1]

## BACKGROUND

This case concerns allegations of breach of contract, fraud, and civil conspiracy brought by plaintiff Lowell Lundstrom Jr. against defendants Daniel M. Homolka, Daniel M. Homoka P.A., Mikal C. Watts, and Watts Guerra LLP.

Plaintiff is a farmer from Sisseton, South Dakota who had a background in marketing. In late 2014, plaintiff's then lawyer, Daniel Rasmus, recommended plaintiff's marketing services to defendants, whom he was working with on a number of lawsuits against Syngenta AG, a global agrochemical and seed producer based in Switzerland. The email was sent to Homolka on December 11, 2014. The first sentence of the introduction email stated, "Dan, we had a client in the office yesterday who is a young

---

[1] Defendants Mikal C. Watts and Watts Guerra LLP did not join in this motion,, and at the evidentiary hearing, their attorneys advised the Court that they did not question personal jurisdiciton.

farmer from Sisseton, SD." Defense Exhibit B. The email explains that plaintiff has a marketing background as well and said "[h]e will help us with our collective advertising strategy and, of course, understands the best publications though which to reach farmers." Id.

Shortly after the December meeting, plaintiff began working with defendants to market the Syngenta litigation to farmers in South Dakota, then throughout the midwestern United States. Plaintiff marketed the lawsuit via a variety of different means and mediums. Plaintiff made all ad-buys, purchasing time slots on radio and television (including many targeting South Dakota) as well as space in various publications aimed at farmers. Plaintiff and Homolka corresponded regularly via email, telephone, and text message. At times, Homolka urged plaintiff and others to target South Dakota farmers. Defendant admits that he "managed and helped with the acquisition of clients and giving support to our team." Doc 71 at 86. In response to the question "So you actually did direct [plaintiff] and others to do work in South Dakota, correct?" Homolka said, "[y]es." Id.

An important facet of the overall marketing strategy in the Syngenta litigation was plaintiff's website, which the defendants leased from him. The website, "LostCornIncome.com," was an interactive website, via which farmers could retain both defendant law firms directly. Plaintiff estimates that most of defendants' South Dakota plaintiffs chose to sign up via this method. Doc. 71 at 26. The website was registered to plaintiff at his Sisseton, South Dakota, address. Plaintiff's Ex. W. Plaintiff was also the contact for any issues with the site. Id. The website was hosted by Wild West Domains, a company based in Scottsdale, Arizona. The IP address for the website was in Houston, Texas. If a farmer did not wish to sign an online retainer agreement via the website, that farmer could instead print out a retainer agreement from the website and send it via regular mail. The print retainer agreement was mailed to plaintiff's address in Sisseton, South Dakota. "Hundreds" of such retainer agreements were received by plaintiff at his Sisseton, South Dakota farm, some "20-30" of them from South Dakota farmers. Id. at

25-6. These agreements were, in all respects other than the listing of the Sisseton, South Dakota, mailing address, the same as the online retainer agreements.

Plaintiff and defendants also held a number of town hall style meetings, at which defendants Homolka, Watts, or, at times, other local attorneys would speak to area farmers about the litigation and inform them of possible claims they might have against Syngenta. Homolka travelled to South Dakota for such meetings on at least four occasions. The town hall meetings were all organized and planned by defendants with input from plaintiff. Plaintiff would often attend the meetings. Relatedly, Homolka travelled to South Dakota for another plaintiff recruitment meeting with the owners of certain grain elevators who this Court understands would have had large claims against Syngenta.[2] On January 9, 2015, Homolka and plaintiff met with lawyers in Brookings, South Dakota, and Yankton, South Dakota, to enlist them as local counsel for some of the town hall meetings. Doc. 71 at 79.

Lastly, plaintiff created an infomercial to market the lawsuit that was run on various television platforms. The infomercial was shot in the vicinity of Minneapolis, Minnesota.

## LEGAL STANDARDS

When deciding an issue of personal jurisdiction, "the court can consider the pleadings, affidavits, exhibits, or other evidence when deciding whether a prima facie showing has been made." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004).

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must plead "sufficient facts to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state." K–V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591–92 (8th Cir.2011) (alteration in original) (internal quotation marks omitted). But in cases such as this where the court holds an evidentiary hearing on the

---

[2] Plaintiff estimates that defendant Homolka travelled to South Dakota to personally attend town halls "six times" throughout the process of marketing the Syngenta lawsuits, and that he travelled to South Dakota a separate time to meet another individual concerning the Syngenta lawsuits. Doc. 71 at 32-3. Defendant Homolka asserts that he travelled to South Dakota for a Syngenta lawsuit marketing related reason "five or six times." Id. at 77.

3

subject and parties "bolster their positions on the motion," with affidavits and other evidence outside the pleadings, "and the district court relies on the evidence, the motion is in substance one for summary judgment." Creative Calling Sols., Inc. v. LF Beauty Ltd., 799 F.3d 975, 979 (8th Cir. 2015), citing Radaszewski ex rel. Radaszewski v. Telecom Corp., 981 F.2d 305, 309–10 (8th Cir.1992). Thus, the plaintiff in this case must prove that personal jurisdiction over the defendant exists by a preponderance of the evidence. Id.

In a diversity case, the court "may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." Romak USA, Inc. v. Rich, 384 F.3d 979, 987 (8th Cir. 2004). The South Dakota Supreme Court has phrased the inquiry as follows:

> South Dakota courts must consider two questions to determine whether they possess "personal jurisdiction over a nonresident defendant." *Kustom Cycles,* 2014 S.D. 87, ¶ 9, 857 N.W.2d at 406. "The first inquiry is whether the legislature granted the court jurisdiction pursuant to South Dakota's Long Arm Statute ...." *Id.* (quoting *Daktronics,* 2007 S.D. 80, ¶ 4, 737 N.W.2d at 416); *see also* SDCL 15-7-2 (South Dakota's long-arm statute). "Second, the assertion of jurisdiction must 'comport with federal due process requirements.'" *Id.* (quoting *Daktronics,* 2007 S.D. 80, ¶ 4, 737 N.W.2d at 416).

Zhi Gang Zhang v. Rasmus, 2019 S.D. 46, ¶ 18, 932 N.W.2d 153, 160, reh'g denied (Sept. 4, 2019), cert. denied, 140 S. Ct. 1111 (2020).

The Eighth Circuit has held that in South Dakota the dual inquiry can be condensed into the due process analysis. See Bell Paper Box, Inc. v. Trans Western Polymers, Inc., 53 F.3d 920, 921 (8th Cir. 1995) ("South Dakota applies its long-arm statute to the fullest extent permissible under due process"). That said, the applicable portion of South Dakota's long arm statute states:

> Any person is subject to the jurisdiction of the courts of this state as to any cause of action arising from the doing personally, through any employee, through an agent or through a subsidiary, of any of the following acts:. . .
> (5) Entering into a contract for services to be rendered or for materials to be furnished in this state by such person; . . .

S.D.C.L. 15-7-2.

"Due process allows a Court to exercise personal jurisdiction over a non-resident defendant only if doing so is consistent with traditional notions of fair play and substantial justice and if the defendant has sufficient "minimum contacts" with the forum state." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Minimum contacts exist if the defendant "should reasonably anticipate being haled into court there." World–Wide Volkswagen Corp., 444 U.S. at 297. Whether considered as a part of the minimum contacts inquiry or as a separate part of the overall due process inquiry, it is critical that a court determine whether a defendant performed "'some act by which the defendant purposefully avail[ed] [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)) (cleaned up).

For claims arising out of contract such as this, a court may properly exercise personal jurisdiction over a defendant when the defendant can be said to have "reach[ed] out beyond one state and create[ed] continuing relationships and obligations with citizens of another state." Burger King Corp., 471 U.S. at 473 (internal quotation marks omitted). However, having entered into a contract with a citizen of another state standing alone is insufficient to establish personal jurisdiction in that forum. Id. at 478.
In the Eighth Circuit, a five-factor test is used to determine whether a defendant has the minimum contacts necessary for personal jurisdiction: "(1) the nature and quality of the contacts, (2) the quantity of the contacts, (3) the relationship of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience or inconvenience of the parties." Fastpath, Inc. v. Arbela Techs. Corp., 760 F.3d 816, 821 (8th Cir. 2014). "In contract disputes, we first consider the role of the contract in the personal jurisdiction analysis before addressing the five factors."
Henry Law Firm v. Cuker Interactive, LLC, 950 F.3d 528, 532 (8th Cir. 2020). To evaluate the role of the contract in the personal jurisdiction analysis the Court must assess 'prior negotiations and contemplated future consequences, along with the terms of the

contract and the parties' actual course of dealing." Creative Calling Sols., Inc. v. LF Beauty Ltd., 799 F.3d 975, 980 (8th Cir. 2015) (quoting Burger King Corp., 471 U.S. at 479).

Finally, even when minimum contacts with a forum exist, jurisdiction can still be unreasonable if the exercise of personal jurisdiction occurs "under circumstances that would offend 'traditional notions of fair play and substantial justice.'" Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). To assess this final question, the court must consider the burden on the defendants of having to answer suit in this forum, the interest of the plaintiff of having his grievances redressed in his forum of choice, and the interests of the forum state in providing redress for plaintiff's grievances. Id. at 113-15.

As for the issue of venue, the "question—whether venue is 'wrong' or 'improper'—is generally governed by 28 U.S.C. § 1391." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 55 (2013) (cleaned up). That provision states that "[e]xcept as otherwise provided by law . . . this section shall govern the venue of all civil actions brought in district courts of the United States." 28 U.S.C. § 1391(a)(1). Section 1391(b) provides that "[a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

## DISCUSSION

Defendant Homolka and his law firm's contacts in South Dakota relating to this litigation are such that he should have reasonably anticipated being haled into court in this state. Homolka and his law firm negotiated a contract that clearly called for the establishment of a long-term professional relationship between himself and plaintiff.

6

While the actual terms of the contract are in dispute in this litigation, the course of dealing between the parties clearly shows a long-term and close working relationship. The nature of the business between them also speaks to the creation of a close working relationship. Plaintiff was the primary creative talent in the Syngenta lawsuits marketing campaign and Homolka "managed" marketing efforts. Doc 71 at 86 (Homolka: "I managed and helped with the acquisition of clients…"). Finally, while Homolka claimed in an affidavit that at the time of negotiating the contract with plaintiff he believed plaintiff to be a resident of Lakeville, Minnesota, that assertion must be false. See defendant Homolka's affidavits: Doc. 12 at 2; Doc. 59. In the email that first brought plaintiff to Homolka's attention, it clearly stated that plaintiff was a "a young farmer from Sisseton, SD." Defendant's Ex. B. Homolka later stated that he did not recall that the fact of plaintiff's residency when he made the statement in the affidavit because of the extremely high volume of emails he received throughout the marketing of the Syngenta lawsuits, but remembered once the email was brought to his attention more recently. Doc. 71 at 87.

Homolka claims that he did not believe he was contracting to create a long-term working relationship with a South Dakota resident who would do much of that work in South Dakota. This Court does not find that claim credible. Homolka was also informed in the email introducing him to plaintiff that plaintiff was a South Dakota farmer. Defendant's Ex. B. Homolka repeatedly instructed those marketing the Syngenta lawsuit, including plaintiff, to target South Dakotans. Homolka was also intimately involved in the planning of the South Dakota town hall meetings. See Doc. 71 at 84-5. Homolka travelled to South Dakota "five to six times" for the purpose of marketing the lawsuit—at least four of those visits were for town halls. Doc. 71 at 32-3. These town hall meetings had no purpose other than marketing the lawsuit, which was also the purpose of the contract between plaintiff and defendants. Finally, Homolka was specifically asked at the evidentiary hearing on this motion whether he had directed others' activities in South Dakota, and he said: "Yes." Doc. 71 at 86. Homolka's physical presence in South Dakota to work in conjunction with plaintiff to carry out the purpose of their contract to

7

market the Syngenta litigation is a weighty contact in the specific personal jurisdiction calculation.

Another of Homolka's significant contacts is his receipt of client retainer agreements via plaintiff's farm in Sisseton, South Dakota. While it was not the primary means by which Homolka retained clients in the Syngenta litigation, it was the method used for clients who did not want to sign up in-person at a town hall meeting or online via the website. Homolka acquired tens of clients via retainer agreements posted to plaintiff's farm in South Dakota. Thus, the purpose of the parties' contract was partially fulfilled via this mechanism.

By the same token, Homolka acquired hundreds of clients via plaintiff's website, "LostCornIncome.com," which was registered to plaintiff at his Sisseton, South Dakota, farmhouse. Many of Homolka's clients were South Dakota residents. See Plaintiff's Ex. 22. While this is not a particularly significant contact in light of Homolka's other, more substantial contacts in South Dakota, it is another point of interaction with the state related to carrying out the purpose of the contract at issue in this case.

> When all of the circumstances are viewed in the aggregate, [Homolka] had fair warning that he could be subject to jurisdiction in [South Dakota]. Burger King, 471 U.S. at 472-73, 105 S.Ct. 2174 (holding that a defendant has "fair warning" if he purposefully directs his activities at residents of the forum and if the litigation results from alleged injuries arising out of or relating to those activities.).

Henry Law Firm v. Cuker Interactive, LLC, 950 F.3d 528, 533 (8th Cir. 2020). Homolka's above contacts with South Dakota "were numerous and significant and extended over a substantial time." Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995). He directed that work be done in South Dakota, directed the targeting of South Dakota residents, physically visited South Dakota multiple times to market the lawsuit to local farmers, and retained clients via mailings to plaintiff's residence in South Dakota. All of these actions were taken in furtherance of the purpose of Homolka's contract with plaintiff to market the Syngenta lawsuits. In short, a significant portion of the contract between the parties was performed in South Dakota and Homolka always knew that it would be. In fact,

8

Homolka directed and managed much of that performance. For these reasons, the first three factors of the Fastpath test support the exercise of personal jurisdiction over Homolka and his law firm in this case. Cf. Deloney v. Chase, 755 F. App'x 592, 597 (8th Cir. 2018) (The Eighth Circuit affirmed the dismissal of a legal malpractice suit for lack of personal jurisdiction because the defendant had never visited the forum, advertised in the forum, employed anyone in the forum, nor personally conducted any activities whatsoever in the forum.).

The final two Fastpath factors are less important but also weigh in favor of jurisdiction. The fourth factor accounts for the interests of the forum state in maintaining the case. "[South Dakota] has an obvious interest in providing a local forum in which its residents may litigate claims against non-residents." Northrup King Co., 51 F.3d at 1389. The fifth factor: convenience of the parties, also weighs very slightly in favor of jurisdiction. The plaintiff is traditionally the master of the action and is entitled to choose among permissible forums. In this case, plaintiff chose his home forum of South Dakota. Defendants Homolka and Daniel M. Homolka, P.A. are at home in Minnesota, defendants Watts and Watts Guerra LLP are at home in Texas. Evidence and witnesses in the case seem to be spread primarily between the three aforementioned states. Thus, because no state would be convenient to all the parties and witnesses there is nothing to move the Court to overrule plaintiff's choice of forum.

In short, the nature and extent of Homolka and his law firm's contacts make clear that they have purposefully availed themselves of the laws of South Dakota. In carrying out the contract to market and have plaintiff market the Syngenta lawsuits, he travelled to South Dakota, directed marketing activities in South Dakota and, in conjunction with plaintiff, recruited South Dakota clients. Homolka clearly reached out from his home state to recruit South Dakota clients and used plaintiff as a means of doing so. This suit arises from defendants' marketing activities; plaintiff's essential claim is that defendants have not paid him what he is owed for his work marketing the Syngenta lawsuits for them. Burger King Corp., 471 U.S. at 473 ("[W]ith respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create

9

continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities.").

As to the question of venue, 28 U.S.C. § 1391(b)(2) provides that venue lies in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). As discussed above, a substantial portion of the performance of the contract at issue in this case occurred at plaintiff's farm in Sisseton, South Dakota, which lies within the boundaries of the Northern Division of the District of South Dakota. That includes performance by plaintiff as well as the receipt of retainer agreements on behalf of Daniel M. Homolka, P.A. and Watts Guerra LLP and the registration of the website via which many more retainers were received. Additionally, some of the South Dakota town halls were held within the boundaries of the Northern Division. Indeed, much of the work that Homolka directed in South Dakota was performed within the Northern Division. Thus, venue in this Court is proper.

IT IS HEREBY ORDERED that defendants Daniel M. Homolka and Daniel M. Homoka P.A.'s motion to dismiss for lack of personal jurisdiction and improper venue, Doc. 10, is DENIED.

DATED this 21st day of July, 2020.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge