

FILED

OCT 2 1 2021

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| LOWELL LUNDSTROM JR., <br><br> Plaintiff, <br><br> vs. <br><br> DANIEL M. HOMOLKA P.A., DANIEL M. HOMOLKA, WATTS GUERRA LLP, MIKAL C. WATTS, <br><br> Defendants. | 1:19-CV-01006-CBK <br><br> OPINION AND ORDER <br> ON MOTIONS FOR <br> SUMMARY JUDGMENT |

## INTRODUCTION

This case concerns allegations of breach of contract, fraud, and civil conspiracy brought by plaintiff Lowell Lundstrom Jr. against defendants Daniel M. Homolka and Mikal C. Watts, and their respective law firms Daniel M. Homolka P.A. and Watts Guerra LLP. This case has twice been before the court. First, on motions to dismiss for failure to state a claim upon which relief could be granted and second, on a motion to dismiss for lack of personal jurisdiction. All such motions were denied. All four defendants have now filed motions for summary judgment. Plaintiff has filed a motion to present the issue of punitive damages to the jury.

This case arises out of the mass tort litigation against Syngenta alleging Syngenta's decision in 2011 to commercialize genetically modified corn seed in the absence of Chinese approval to import corn with the modified trait caused corn prices to dramatically drop in the United States. *See* In re Syngenta AG MIR162 Corn Litig., 65 F. Supp. 3d. 1401 (J.P.M.L. 2014). On December 22, 2014, cases that were filed in federal courts around the country were transferred to the District of Kansas and consolidated by the Judicial Panel on Multistate Litigation. *Id.*

The Watts defendants decided that mass tort lawsuits against Syngenta were more advantageous and began efforts to market their legal services to farmers in 25 states who were most adversely affected by Syngenta's premature marketing of the genetically modified corn seed. The lawsuits were filed in Minnesota state court where Syngenta's North American seed business is based. Syngenta attempted to remove the state cases to the MDL but the MDL rejected removal, finding the cases were properly filed in state court. Those cases were eventually consolidated in Hennepin County, Minnesota. The Watts defendants eventually filed nearly 60,000 suits against Syngenta in state court.

On December 7, 2018, the MDL Court certified a settlement class and approved a global settlement of claims against Syngenta, including claims that had been pending in the MDL, in the consolidated proceeding in Minnesota state court, and in federal court in Illinois. In re Syngenta AG MIR 162 Corn Litig., 357 F. Supp. 3d 1094 (D. Kan. 2018). The litigation was settled for $1.5 billion.

As part of its project to market the Syngenta litigation, the Watts defendants contacted hundreds of attorneys in many states, entering into agreements to act as co-counsel on behalf of the affected farmers and grain shippers and agreeing to split attorneys' fees. The attorneys orchestrated town hall meetings where interested plaintiffs could learn about the litigation and sign contingency fee agreements with the Watts defendants and local counsel. One such local law firm with whom the Watts defendants entered into a joint representation agreement was the Homolka firm.

In November 2014, the Watts and Homolka defendants entered into a fee sharing agreement under which they agreed to share attorneys' fees recovered on behalf of any farmer who agreed to participate in litigation against Syngenta and hire the Watts and Homolka defendants as their attorneys. Homolka in turn contacted attorneys James Hovland and Dan Rasmus, inviting them to participate in the project. In December 2014, Rasmus contacted Lundstrom to see if Lundstrom would be interested in helping to market the Syngenta corn litigation project to farmers. Lundstrom, a farmer, also had marketing experience.

2

On December 15, 2014, Lundstrom, Rasmus, Hovland, Homolka, and Hector Eloy Guerra met in a law office in Minnesota to discuss "hiring" Lundstrom to assist in marketing the Syngenta corn litigation. Lundstrom alleges that Homolka asked Lundstrom how much money Lundstrom would require per month to free him up to work on the project. Lundstrom alleges that Homolka agreed to pay Lundstrom $10,000 per month "through the end of the project," that is, until the litigation was dismissed or settled, to lease the web site LostCornIncome.com and for Lundstrom's services in brokering and placing media on the site.

Plaintiff also claims that he agreed to engage in a host of other marketing related activities in exchange for further compensation. In addition to establishing and maintaining a web domain (lostcornincome.com), plaintiff claims he produced a 30-minute long infomercial ("LOST CORN INCOME: Special Report"), arranged and managing a toll-free telephone number for prospective clients to call, managed all media buys (for formats including radio, newspapers, and television), prepared fact sheets to give prospective agricultural clients, and prepared budgets for all of the above. Plaintiff also participated in town hall meetings used to solicit and attract Syngenta litigation clients.

Lundstrom claims that, at some point during negotiations (although not necessarily on December 15, 2014), Homolka promised Lundstrom a $3.4 million bonus for signing up plaintiff farmers whose claims totaled 6 million acres. Lundstrom alleges that Homolka told Lundstrom that if Lundstrom would accept less money monthly "up front" for Lundstrom's services during the marketing campaign, Lundstrom would be paid a higher bonus at the end of the project.

Finally, Lundstrom alleges that Homolka told Lundstrom to obtain a new vehicle for transportation to the many town hall meetings, which vehicle would be paid for by the Homolka and Watts defendants.

Defendants deny that Lundstrom was entitled to be paid monthly through the end of the litigation. Defendants deny that Lundstrom was promised a bonus. Defendants

deny that they promised to reimburse Lundstrom's purchase of a vehicle. The Watts defendants deny that they were a party to the contract.

The Watts defendants' assertion is contrary to the affidavit of Daniel Homolka, Doc. 12, wherein he states, in support of the Homolka defendants' motion to dismiss, that "I was making a contract on behalf of Daniel M. Homolka, P.A., my law firm, and on behalf of Watts Guerra, LLP." The Watts defendants' assertion is also not consistent with the Watts defendants' payment to Lundstrom for his services in relation to the web site (the $10,000 monthly payment) and plaintiff's expenses involved in his other marketing activities.

Lundstrom claims that, when he was not being paid, he was told payment was not forthcoming because Watts Guerra funds were all tied up in trial work. Lundstrom claims he told Homolka he should offer his services to other lawyers, representing that he was getting many telephone calls with offers, and Homolka dissuaded Lundstrom from doing so, reassuring Lundstrom that he would be paid through the end of the litigation.

The difficulty here is that, despite the lengthy written agreements between the Watts defendants and every attorney and firm with whom the Watts defendants entered into joint representation agreements, and the lengthy representation agreements with each individual farmer (nearly 60,000), at no time did the Watts or Homolka defendants offer a written agreement to Lundstrom for his marketing work. In fact, it is undisputed that Lundstrom was denied such a written agreement on the claimed basis that defendants could not enter into a contract with a non-attorney, thus sharing legal fees with a non-lawyer. Of course, plaintiff was not hired to provide legal services. That fact raises doubt as to whether the denial of a written agreement was based upon anything other than a desire to not be bound by promises made to Lundstrom.

## DECISION

### I. **Jurisdiction.**

Lundstrom filed suit in South Dakota state court on February 20, 2019, 54CIV19-000016. The Watts defendants filed a notice of removal in South Dakota federal district court on April 5, 2019. No consent to removal was filed by the Homolka defendants as

required by 28 U.S.C. § 1446 (b)(2)(A) but the notice of removal states that the Homolka defendants consented to removal.

Removal is not effected unless "all the parties on the same side of the controversy united in the petition." Prichett v. Cottrell, Inc., 512 F.3d 1057, 1062 (8th Cir. 2008) (*quoting* Chicago, R.I. & P. Ry. v. Martin, 178 U.S. 245, 248, 20 S.Ct. 854, 44 L.Ed. 1055 (1900)). "While the failure of one defendant to consent renders the removal defective, each defendant need not necessarily sign the notice of removal." Pritchett v. Cottrell, Inc., 512 F.3d at 1062. "There must, however, 'be some timely filed written indication from each served defendant,' or from some person with authority to act on the defendant's behalf, indicating that the defendant 'has actually consented' to the removal." *Id. But see* Mayo v. Board of Educ. of Prince George's County, 713 F.3d 735, 742 (4th Cir. 2013) ("a notice of removal signed and filed by an attorney for one defendant representing unambiguously that the other defendants consent to the removal satisfies the requirement of unanimous consent for purposes of removal").

Four years after the Pritchett panel entered its decision, the Eighth Circuit held in Christiansen v. W. Branch Cmty. Sch. Dist., 674 F.3d 927, 933 (8th Cir. 2012), that "non-removing defendants who wish to evince consent to removal should either sign the notice of removal or file a timely and unequivocal consent to such course of conduct." The Christiansen panel held that the unanimity requirement was satisfied in that case because the non-removing defendant filed a motion to dismiss, conveying consent to removal. The panel specifically limited their holding to that case and warned that they "express no opinion regarding whether the unanimity requirement may be satisfied by the mere filing of motion to dismiss (silent on removal) within thirty days of service, or the filing of a curative consent to removal after the thirty-day period." Christiansen v. W. Branch Cmty. Sch. Dist., 674 F.3d at 933. Like the defendant in Christiansen, the Homolka defendants timely filed a motion to dismiss in federal court. However, the Homolka defendants did not file a curative consent to removal at any time.

The unanimity requirement was not a part of the removal statute at issue in Pritchett and Christiansen. It was apparently a judicial construct. Congress amended the

5

removal statutes in December 2011. Pub.L. No. 112–63, 125 Stat. 758. Section
1446(b)(2)(A) now includes a consent requirement "when a civil action is removed solely
under section 1441(a)" [actions within the federal courts' original jurisdiction].

     28 U.S.C. § 1446(d) provides that, after filing of the notice of removal, "the
defendant or defendants shall give written notice thereof to all adverse parties and shall
file a copy of the notice with the clerk of such State court, which shall effect the removal
and the State court shall proceed no further unless and until the case is remanded." The
Eighth Circuit has made clear that "removal is effected when the notice of removal is
filed with the state court and at no other time." Anthony v. Runyon, 76 F.3d 210, 214
(8th Cir. 1996), *quoted with approval in* Brooks v. Liberty Life Assurance Co. of Bos.,
937 F.3d 1144, 1145 (8th Cir. 2019).

     The Watts defendants did not file written notice of the removal with the clerk of
the state court as required by 28 U.S.C. § 1446(d) to "effect the removal." The action is
thus pending in the state court, as shown in the South Dakota eCourts database.
Although no notice of removal was ever filed in state court to "effect" removal, the
matter has not proceeded at all in state court since the filing of the sheriff's return and
admissions of service in 2019.

     Considering that the defendants are attorneys and their law firms, who are
represented by other attorneys and their law firms, it is incredulous that no defendant or
their attorney managed to comply with federal law with respect to the filing of the notice
of removal in state court to effect the removal. Plaintiff did not object to removal despite
the defendants' failure to comply with several statutory removal procedures.

     "The threshold inquiry in every federal case is whether the court has
jurisdiction" and the Eighth Circuit has "admonished district judges to be attentive to a
satisfaction of jurisdictional requirements in all cases." Rock Island Millwork Co. v.
Hedges-Gough Lumber Co., 337 F.2d 24, 26-27 (8th Cir. 1964), and Sanders v. Clemco
Industries, 823 F.2d 214, 216 (8th Cir. 1987).

     "Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins.
Co. of America, 511 U.S. 375, 377 (1994). As such, federal courts only have

6

power to hear cases when authorized to do so by both the Constitution and federal statute. *Id.* "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Doe v. Aberdeen Sch. Dist., No. 1:18-CV-01025-CBK, 2019 WL 4740163, at *3 (D.S.D. Sept. 27, 2019).

I, *sua sponte*, raised the issues surrounding failure to comply with the removal statutes at a pretrial conference on August 27, 2021. I directed the parties to address those issues. In response, counsel for the Watts defendants sent a letter to the Court on September 3, 2021, setting forth legal arguments and concluding that this Court does not have jurisdiction due to the procedural defects caused by counsel who removed this matter on behalf of the Watts defendants. Plaintiff responded by letter on September 8, 2021, asserting that removal defects are procedural only and do not affect this Court's jurisdiction, *citing* Holbein v. TAW Enterprises, 983 F.3d 1049 (8th Cir. 2020). Counsel for the Homolka defendants responded by letter on September 10, 2021, on behalf of all defendants, asserting that Holbein is limited and is not applicable to this case. Counsel for plaintiff, in a letter dated September 10, 2021, disputed defendants' assertion that Holbein does not apply. Thus, all defendants now assert that this case should be remanded to the South Dakota Circuit Court, while plaintiff, who initiated this action in state court now asserts this matter should remain in federal court.

The Eighth Circuit held in Holbein that the forum defendant rule found at 28 U.S.C. § 1441(b)(2) is not jurisdictional. Holbein v. TAW, 983 F.3d at 1059. The Eighth Circuit based its holding in Holbein on the location of § 1441 within Title 28 U.S.C., the Judicial Code. Title 28 of the United States Code, entitled Judiciary and Judicial Procedure, sets forth, *inter alia,* the jurisdiction and venue provisions, 28 U.S.C. Chapters 81-99, §§ 1251-1631. Chapter 85, §§ 1330 – 1369, sets forth the district court jurisdiction provisions. Chapter 87 (there is no Chapter 86), §§ 1390 – 1413, sets forth the district court venue provisions. Chapter 89 (there is no Chapter 88), §§ 1441-1455, sets forth the authority and procedure for removal of some state court actions to federal

court.  I would not have ruled as did the panel in Holbein but I am nevertheless bound by it.

Although Holbein concerned one specific provision in § 1441(b)(2), the Eighth Circuit's holding is applicable to the entirety of 28 U.S.C. § Chapter 89.  It now appears that the parties can, by agreement or by inattentiveness, remove state court actions without actually complying with Congress's rules for so doing.  Notwithstanding whether the defendants complied with the removal procedures, when a federal court does have jurisdiction, it has a "'virtually unflagging' obligation to exercise it."  Holbein v. TAW Enterprises, Inc., 983 F.3d at 1060 (internal quotation marks omitted) (citing Sprint Communications, Inc. v. Jacobs, 571 U.S. 69, 77, 134 S. Ct. 584, 590–91, 187 L. Ed. 2d 505 (2013) and Cohens v. State of Virginia, 19 U.S. 264 (6 Wheat.), 404, 5 L. Ed. 257 (1821)).

This matter was removed to federal court on the basis that this Court had original diversity jurisdiction pursuant to 28 U.S.C. § 1332, and removal was thus authorized by 28 U.S.C. § 1441(a).  Unauthorized removal can only be challenged if done so within 30 days of the filing of the notice of removal.  28 U.S.C. § 1447(c).   Plaintiff did not object to defendants' failure to comply with the removal statute and therefore waived any defect in removal.  Holbein v. Taw Enterprises, Inc., 983 F.3d at 1053 (8th Cir. 2020).

**II. Summary Judgment.**

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Knutson v. Schwan's Home Service, Inc., 711 F.3d 911, 913 (8th Cir. 2013).  The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

> The party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S.Ct. at 2553. Such a showing shifts to the non-movant the burden to go beyond the pleadings and present affirmative evidence showing that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d (1986). The non-movant "must show there is sufficient evidence to support a jury verdict in [its] favor." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). "Factual disputes that are irrelevant or unnecessary will not be counted," *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, and a mere scintilla of evidence supporting the nonmovant's position will not fulfill the non-movant's burden, *id.* at 252, 106 S.Ct. 2505.

*Uhiren v. Bristol-Myers Squibb Co.*, Inc., 346 F.3d 824, 827 (8th Cir. 2003). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law. "*Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034 (8th Cir. 2005).

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 634 (8th Cir. 1995). The evidence must be considered in the light most favorable to the nonmoving party and all reasonable inferences must be resolved in that party's favor. *Northern Bottling Co., Inc. v. Pepsico, Inc.*, 5 F.4th 917, 922 (8th Cir. 2021).

In a case where jurisdiction is founded upon diversity of citizenship, as in the present case, the district court applies the substantive law of the forum state. Safeco Ins. Co. of Illinois v. Palazzolo, ___ F.4th ___, ___, 2021 WL 4823394, at *1 (8th Cir. Oct. 18, 2021), *citing* Rose v. Midland National Life Ins. Co., 954 F.3d 1117, 1119 (8th Cir. 2020). All parties cite South Dakota law in support of or in resistance to the pending motions for summary judgment. No claim is made that a choice of law analysis is necessary.

### A. Contract Claims against Homolka Defendants.

The Homolka defendants contend that there are no genuine issues of material fact that the claimed bonus was not part of the contract, that reimbursement for a truck was not part of the contract, that plaintiff was not entitled to additional compensation other than $10,000 per month, and that plaintiff was not entitled to receive payments through the resolution of the litigation. Finally, the Homolka defendants contend that plaintiff diverted expense payments to himself, thus resulting in payment for the pickup. Daniel Homolka denies that he, individually entered into any contract with plaintiff, but only acted as an agent of the firm.

"An action for breach of contract requires proof of an enforceable promise, its breach, and damages." Morris, Inc. v. State, ex rel. State Dept. of Transp., 806 NW2d 894, 903 (SD 2011). Although the Homolka defendants do not dispute that an oral contract with plaintiff existed, they contest the terms of such contract. Of course, this case is complicated by the uncontested fact that the defendants refused to enter into a written agreement with the plaintiff to memorialize the terms of the contract. Defendants cannot take advantage of their refusal to memorialize the parties' agreement by now contesting the terms of that contract and now requesting summary judgment. Genuine issues of material fact exist as to the terms of the agreement.

Plaintiff asserted in the complaint that defendant breached an oral contract. Under South Dakota law, a contract can be either express or implied. SDCL 53-1-3. "In determining whether an implied contract exists, [the South Dakota Supreme Court has held that] the pertinent inquiry is whether the facts and circumstances properly evaluated

10

permit an inference that services were rendered in expectance by one of receiving and the other of making compensation." Setliff v. Akins, 616 NW2d 878, 885 (SD 2000) (internal quotations omitted). "The existence and governing terms of any implied contract present questions of fact to be decided by a jury." Holland v. FEM Elec. Ass'n, Inc, 637 NW2d 717, 719 (SD 2001).

### B. Contract Claims against Watts Defendants.

The Watts defendants contend that any contract, if it existed, was between plaintiff and the Homolka defendants. Not only are there genuine issues of material fact precluding summary judgment for the Watts defendants on this issue, there is evidence in the record showing that the opposite could be true. The Watts defendants paid for plaintiff's expenses and for his services. The Watts defendants issued a 1099 tax statement to the plaintiff in 2015. The Watts defendants required plaintiff to submit budgets to the Watts defendants prior to plaintiff being paid for his services and expenses.

The Watts defendants entered into a contract with the Homolka defendants to pursue litigation against Syngenta and to split any fees earned. When someone is involved with litigation, costs are a necessary element. The Watts defendants agreed to front the expenses of litigation in exchange for a greater share of the fees earned. The Watts defendants were "in charge" of the litigation. Homolka thereafter sought the services of plaintiff to market the attorneys to prospective farm clients. A person whose last name was Guerra was involved in the oral contract negotiations. The Watts defendants now contend that Guerra was an independent contractor who could not bind the Watts defendants.

Under South Dakota law, a principal who, by conduct or want of ordinary care, causes a third person to believe that another person is his agent, creates an ostensible agency. SDCL 59-1-5. Whether the Watts defendants caused plaintiff to believe Homolka and Guerra were agents of the Watts defendants, thus binding the Watts defendants, is an issue of fact for the jury. Whether an agency existed between the Watts defendants and the Homolka defendants depends upon "(1) manifestation by the principal

that the agent shall act for the principal; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the undertaking." S.D. Pattern Jury Instruction 30-50-30.

Genuine issues of material fact exist as to whether the Watts defendants are bound by the alleged oral contract under the terms alleged by plaintiff and, if so, whether they breached the contract.

### C. Contracts Against Public Policy.

The Homolka defendants contend that plaintiff's alleged contract for a bonus would be void as against public policy. The Homolka defendants contend that the rule against champerty forbids plaintiff from receiving a share of the litigation in exchange for procuring clients for an attorney. However, plaintiff does not allege that he was going to receive a share of the litigation. He alleges that he was going to be paid $3.4 million for his efforts in marketing the Syngenta litigation if, as a result of plaintiff's efforts, the defendants were able obtain contingent fee arrangements with Syngenta plaintiffs who farmed a certain total number of farm acres. In many respects, it is no different than a lawyer paying a media company for a billboard or television commercial. The media company expects to be paid, not out of any particular fee award, but out of the attorney's or law firm's account. In both cases, the goal is to obtain clients for the attorney. That does not imply that marketing fees paid or received amount to sharing of fees with the marketer. Of course, the law firm's funds used to pay for marketing services come from earned client fees. Unless the marketing fee is based upon a percentage of the fee earned, there is no violation of public policy. In the 30 years I practiced law, often as a trial lawyer, I always thought it was unseemly, if not unethical, for a lawyer to advertise. I am obviously of the "old school" in today's climate.

Defendants are not entitled to summary judgment as a matter of law on the claimed basis that plaintiff's receipt of a bonus would be against public policy.

### D. Fraudulent Misrepresentation Claim.

Plaintiff alleges that defendants fraudulently induced plaintiff to enter in an oral contract for plaintiff's services with no intention of paying to plaintiff the entire

compensation promised. A promise made without any intention of performing can constitute fraud in relation to a contract. *See* S.D. Pattern Jury Instruction 30-10-140. The claim that contract negotiations included the possibility of payment of a bonus is supported by several witnesses to the contract negotiations. Genuine issues of material fact exist as to whether payment of a bonus was part of the agreement. Further, genuine issues of material fact exist as to whether plaintiff was induced to purchase a pickup under the promise that he would receive reimbursement for the vehicle.

### E. Civil Conspiracy Claim.

The defendants contend that plaintiff's civil conspiracy claim must fail because his underlying fraudulent or negligent misrepresentation claim fails. The Watts defendants contend that plaintiff's civil conspiracy claim must fail because there is no evidence the Watts defendants agreed with the Homolka defendants to commit fraud. Defendants' argument is rejected.

> A civil conspiracy is, fundamentally, an agreement to commit a tort. To establish a prima facie case of civil conspiracy, the plaintiff must show: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy.

Kirlin v. Halverson, 758 N.W.2d 436, 455 (S.D. 2008). There exist genuine issues of material fact as to whether the Watts defendants and the Homolka defendants agreed to deny plaintiff the benefit of a written contract under the guise that the attorneys were prevented from so doing.

### F. Unjust Enrichment.

The Homolka defendants contend that plaintiff's unjust enrichment claim should be dismissed as a matter of law because an express contract existed and because plaintiff was paid "significant" compensation. The Watts defendants contend that, where there is an express contract, there can be no unjust enrichment. That is normally true. The problem is that all defendants deny there was a contract for the bonus or to reimburse plaintiff the expense of a vehicle.

The Watts defendants contend that they cannot be liable for fraudulent misrepresentation because the Watts defendants did not make any representations to plaintiff. As set forth previously, genuine issues of material fact exist as to whether the Watts defendants are bound by the Homolka defendants' alleged promises.

As I set forth previously in my order denying the motions to dismiss, "where there is a valid express contract existing between parties in relation to a transaction fully fixing the rights of each, there is no room for an implied promise, or a suit on *quantum meruit*." Thurston v. Cedric Sanders Co., 125 NW2d 496, 498 (SD 1963). In this case, the defendants deny there was a valid and enforceable express contract for the payment of a bonus or any additional compensation other than what plaintiff received.

Genuine issues of material fact exist as to whether there was an express contract to pay plaintiff a bonus, to pay plaintiff monthly through the termination of the Syngenta litigation, and to reimburse plaintiff for the purchase of a vehicle. South Dakota law limits dual recovery for breach of contract and unjust enrichment. Plaintiff's unjust enrichment theory is an alternative theory of recovery to his breach of contract claim. If, as defendants claim, there was no express oral contract to pay plaintiff as claimed, genuine issues of material fact exist as to whether defendants were unjustly enriched.

### F.  Individual Claims.

The individual defendants contend that they were acting on behalf of their law firms while pursuing the Syngenta litigation. Watts further contends that he cannot be held personally liable for the obligations of the limited liability partnership. Whether the individual defendants were acting on their own behalf or only as agents of the law firms is not clearly established in the record. This is especially true as to the non-contractual claims. Defendants are not entitled to summary judgment in their individual capacities.

### G.  Punitive Damages.

Plaintiff filed a motion to submit the issue of punitive damages to the jury. The Watts defendants contend that, since they are entitled to summary judgment on the fraud claims, there can be no award of punitive damages.

Under South Dakota law, punitive damages are not an available remedy on a claim for breach of contract.  Punitive damages are available "[i]n any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed." SDCL § 21-3-2.  Punitive damages are appropriate "when the complaining party can prove an independent tort that is separate and distinct from the breach of contract."   Grynberg v. Citation Oil & Gas Corp., 573 NW2d 493, 500 (SD 1997).

In this case, plaintiff alleges an independent tort – fraudulent misrepresentation. Plaintiff alleges that defendants fraudulently represented that they could not enter into a written contract for plaintiff's services, which representation was certainly to plaintiff's detriment.   The failure of a written contract after all is one reason this matter is before the court.  As set forth above, I find that genuine issues of material fact exist, precluding summary judgment in favor of defendants on plaintiff's fraudulent misrepresentation claim.  Therefore, summary judgement is not appropriate on plaintiff's punitive damages claim.

South Dakota law further requires that, before any claim for punitive or exemplary damages "may be submitted to the finder of fact, the court shall find, after a hearing and based upon clear and convincing evidence, that there is a reasonable basis to believe that there has been willful, wanton or malicious conduct on the part of the party claimed against." SDCL § 21-1-4.1.  As I have previously held, SDCL 21-1-4.1 is a procedural statute which  "need not be applied by federal courts sitting in diversity matters and applying South Dakota law." Ammann v. Massey-Ferguson, Ltd., 933 F. Supp. 840, 843 (D.S.D. 1996).  Nonetheless, I will decide prior to submission of the case to the jury, whether the evidence admitted at trial supports an instruction on punitive damages.

## ORDER

Based upon the foregoing,

IT IS ORDERED:

1.  Defendants Daniel M. Homolka and Daniel M. Homolka, P.A.'s motion, Doc. 80, for summary judgement is denied.

15

2.  Defendants Mikal C. Watts and Watts Guerra, LLP's motion, Doc. 84, for summary judgment is denied.

3.  Plaintiff's motion, Doc. 91, for leave to present the issue punitive damages to the jury is denied as premature.

DATED this 21st day of October, 2021.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge