UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

FILED
FEB 15 2022
*Matthew Thelen*
CLERK

| | |
|---|---|
| LOWELL LUNDSTROM, JR., | 1:19-CV-01006-CBK |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| DANIEL M. HOMOLKA, P.A., DANIEL M. HOMOLKA, WATTS GUERRA LLP, AND MIKAL C. WATTS, | |
| Defendants. | |

Mr. Lowell Lundstrom, Jr. ("plaintiff") motioned this Court on December 16, 2021, for a new trial on the issue of damages, and in the alternative, a new trial in its entirety. Doc. 196. Defendant Watts Guerra LLP filed its response brief on January 5, 2022, in opposition to both counts, which Mr. Mikal Watts joined on opposition to Lundstrom's motion for new trial on all issues.[1] Daniel M. Homolka, P.A. and Mr. Daniel Homolka ("Homolka defendants") filed their own opposition brief the same day, agreeing with the arguments laid out by Watts Guerra and Mr. Watts ("Watts defendants"). Mr. Lundstrom replied to the defendants' briefs on January 19, 2022, making this matter ripe for adjudication.[2]

---

[1] While both Watts Guerra LLP and Mr. Mikal Watts filed the response brief together in its entirety, only Watt Guerra has standing to contest a motion for new trial solely on damages. The jury found that Mr. Daniel Homolka was not acting as an agent of Mr. Watts in his personal capacity, and thus he is not affected by the plaintiff's request for a new trial on damages alone. Regardless of how this Court ruled on Mr. Lundstrom's first request for relief, Mr. Watts' personal liability would not be altered. See Hollingsworth v. Perry, 570 U.S. 693, 708 (2013) (holding the litigant "'must have suffered an injury in fact, thus giving [them] a sufficiently concrete interest in the outcome of the issue in dispute.'") (alteration in original) (quoting Powers v. Ohio, 499 U.S. 400, 410 (1991)).

[2] Watts Guerra has also renewed its motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), unrelated to Lundstrom's request for a new trial. Doc. 197. The Court takes no stance on Watts Guerra's motion here, and nothing in this Memorandum and Order should be seen as commenting on that separate matter.

# I.    **BACKGROUND**

The issues in this case were many.  For brevity's sake, this Court discusses those facts most relevant to this motion.  At the heart of this dispute is another bout of litigation, the multi-district litigation ("MDL") concerning Syngenta and its 2011 decision to commercialize genetically modified corn seed in the absence of Chinese approval to import corn with the modified trait, causing corn prices to drop dramatically in the United States.  See In re Syngenta AG MIR162 Corn Litig., 65 F. Supp. 3d 1401 (J.P.M.L. 2014).  The Judicial Panel on Multistate Litigation condensed the flurry of suits around the country into the District Court for the District of Kansas.  But that did not stop Syngenta-related litigation elsewhere.

The Watts defendants, who are plaintiffs' lawyers with a focus on mass tort litigation, figured mass tort lawsuits against Syngenta would be more advantageous than taking part in the MDL and proceeded in finding potential plaintiffs elsewhere.  These other lawsuits were filed in Minnesota state court, where Syngenta's North American seed business is based.  The Syngenta MDL rejected removing these state proceedings into the Kansas-based federal proceedings.  Instead, these state suits were consolidated in Hennepin County, Minnesota.  Watts defendants would eventually file nearly 60,000 suits in state court against Syngenta.

On December 7, 2018, the MDL Court certified a settlement class and approved a global settlement of claims against Syngenta, including claims that had been pending in the MDL, in the consolidated proceeding in Minnesota state court, and in federal court in Illinois.  In re Syngenta AG MIR 162 Corn Litig., 357 F. Supp. 3d 1094 (D. Kan. 2018). The litigation was settled for $1.5 billion.

As part of its project to market the Syngenta litigation, the Watts defendants contacted hundreds of attorneys in many states, entering into agreements to act as co-counsel on behalf of the affected farmers and grain shippers, agreeing to split attorneys' fees.  The attorneys orchestrated town hall meetings where interested plaintiffs could learn about the litigation and sign contingency fee agreements with the Watts defendants

2

and local counsel.  One such local law firm with whom the Watts defendants entered into a joint representation agreement was the Homolka firm.

In November 2014, the Watts and Homolka defendants entered a fee sharing agreement where they agreed to share attorneys' fees recovered on behalf of any farmer who agreed to participate in litigation against Syngenta and hire the Watts and Homolka defendants as their attorneys.  Homolka in turn contacted attorneys James Hovland and Dan Rasmus, inviting them to participate in the project.  In December 2014, Rasmus contacted Lundstrom to see if he would be interested in helping to market the Syngenta corn litigation project to farmers.  Lundstrom, a farmer, also had marketing experience.

On December 15, 2014, Lundstrom, Rasmus, Hovland, Homolka, and Hector Eloy Guerra met in a law office in Minnesota to discuss "hiring" Lundstrom to assist in marketing the Syngenta corn litigation.  Lundstrom alleged that Homolka asked Lundstrom how much money he would require per month to free him up to work on the project.  Plaintiff also alleged that Homolka agreed to pay Lundstrom $10,000 per month "through the end of the project," that is, until the litigation was dismissed or settled, to lease the web site LostCornIncome.com and for Lundstrom's services in brokering and placing media on the site.  The question of when these web-leasing payments were agreed to end were heatedly debated in the November 2021 jury trial and a centerpiece of this litigation.

Plaintiff also claims that he agreed to engage in a host of other marketing related activities in exchange for further compensation.  In addition to establishing and maintaining a web domain (lostcornincome.com), plaintiff claims he produced a 30-minute-long infomercial ("LOST CORN INCOME: Special Report"), arranged and managing a toll-free telephone number for prospective clients to call, managed all media buys (for formats including radio, newspapers, and television), prepared fact sheets to give prospective agricultural clients, and prepared budgets for all of the above.  Plaintiff also participated in town hall meetings used to solicit and attract Syngenta litigation clients.

3

In addition to the question of how much Lundstrom was owed for these web-leasing payments, namely, when were they agreed to cease, two other promises were alleged by Lundstrom to have been made. Plaintiff asserted that a promise was made by Mr. Homolka that Lundstrom would be reimbursed for his traveling to participate in these town hall meetings with $50,000 for a new truck. Finally, and most importantly to Lundstrom, he argued before this Court and a jury of his peers that defendant Homolka promised him a $3.4 million bonus if he could sign up plaintiff farms whose claims totaled six million acres, i.e., that this bonus was non-discretionary. The theory presented by Lundstrom was that he was told by Homolka that if he accepted less money monthly "up front," he would receive a higher bonus at the end of the project. Whether this promise of a multi-million-dollar bonus existed and was non-discretionary posed a critical question at trial. Despite the serious financial stakes at hand, no written agreement was ever drafted, because of purported concerns by defendants about fee-sharing between the defendants and Lundstrom, a non-lawyer. Without such an agreement on paper, the oral contract made by Homolka and what exactly it entailed, was the crux of this litigation.

On November 12, 2021, a jury of eight found that Daniel M. Homolka P.A and Watts Guerra LLP were liable to the plaintiff for a breach of contract made by Mr. Homolka, of which Daniel M. Homolka, P.A. and Watts Guerra LLP are jointly liable because Homolka was acting as agent for the two entities. However, the jury did *not* find that the fourth defendant, Mikal Watts, was culpable because Mr. Homolka was not acting as agent of Watts, but rather only Watts' limited liability partnership. The jury also did not find that Mr. Homolka – and thus, any of the defendants – had fraudulently induced Mr. Lundstrom. Accordingly, the jury awarded Lundstrom $175,000 in compensatory damages and decided that he was not entitled to prejudgment interest. The jury also found that Mr. Watts was acting as a partner for Watts Guerra and that Mr. Watts, Watts Guerra, Mr. Homolka, and Daniel M. Homolka, P.A. were not engaged in a joint venture. The Court entered an amended judgment in favor of Mr. Lundstrom

4

against defendants Daniel M. Homolka, P.A. and Watts Guerra LLP jointly and severally.[3]

Mr. Lundstrom argues a new trial on damages is necessary because there is no reasonable basis in the evidence to support a compensatory award of only $175,000. The plaintiff asserts this measure of damages is too divorced from the facts of this case when three separate theories of breach of contract were presented: (1) the $10,000 per month web-leasing payments; (2) the $50,000 truck reimbursement, and the (3) purported non-discretionary $3.4 million bonus. The three liable defendants counter that the verdict is firmly grounded in the evidence presented to the jury, and that because there was *a* breach of contract, that does not mean the jury found for Lundstrom on all three theories pertaining to beach of the oral contract. Instead, the defendants point to the evidence on how the jury could have conjured the $175,000 figure.

Next, in the alternative, the plaintiff motions this Court for a new trial in its entirety, out of concern the jury brought back a "compromise verdict," asserting there was a close question of liability, the jury's compensatory award was inadequate, and that there was an odd pattern of jury deliberations. Taken together, Lundstrom argues, the verdict was borne out of compromise among differing factions in the jury and is not in fact a unanimous verdict.

To invade the province of the jury should only be done in the rarest of cases. Because of the reasons set forth, this case does not rise to the high bar to disrupt the place of the jury in our civil justice system.

## II.   WHETHER NEW TRIAL ON DAMAGES IS NECESSARY

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 59(a)(1), district courts may grant motions for new trials, or for certain aspects of a trial, including on the sole question of the appropriate measure of damages. Kirk v. Schaeffler Group USA, Inc., 887 F.3d 376,

---

[3] Because the jury found that Mr. Homolka was acting as an agent for Daniel M. Homolka, P.A., (a professional association), only the professional association is liable for the acts of its agent, i.e., Mr. Homolka, not the individual in his personal capacity.

390 (8th Cir. 2018).  See Bavlsik v. Gen. Motors, LLC, 870 F.3d 800, 809 (8th Cir. 2017)
("It is generally permissible for a trial court to grant a new trial on damages only.").  See
also Gasoline Prods. Co., Inc. v. Champlin Refining Co., 283 US 494, 499–500 (1931).
And while the "'appropriateness of a new trial is a federal procedural question decided by
reference to federal law,'" this Court applies state substantive law when inquiring
whether a "state law claim damage award is excessive."  Niemec v. Union Pacific R.R.
Co., 449 F.3d 854, 858–59 (8th Cir. 2006) (quoting Sanford v. Crittenden Mem'l Hosp.,
141 F.3d 882, 884 (8th Cir. 1998)).

This Court will uphold a jury verdict and the damages it awards "'if the jury's
verdict can be explained with reference to the evidence, viewing the evidence in a light
most favorable to the verdict.'"  Lenards v. DeBoer, 865 NW2d 867, 870 (S.D. 2015)
(quoting Hewitt v. Felderman, 841 NW2d 258, 262 (S.D. 2013)).  New trials will not be
granted "merely because the trial court believes the verdict is smaller than it should be."
Reinfeld v. Hutcheson, 783 NW2d 284, 287 (S.D. 2010) (citing Stoltz v. Stonecypher,
336 NW2d 654, 657 (S.D. 1983)).  See C & W Enters., Inc. v. City of Sioux Falls, 635
NW2d 752, 756 (S.D. 2001) ("[T]he determination of an award amount 'is peculiarly a
question for the jury'") (quoting Maryott v. First Nat'l Bank of Eden, 624 NW2d 96, 105
(S.D. 2001)).

"Thus, 'if a verdict is susceptible to more than one construction, the construction
which sustains the verdict must be applied.'"  Zahn v. Musick, 605 NW2d 823, 830 (S.D.
2000) (quoting Morrison v. Mineral Palace, 576 NW2d 869, 872 (S.D. 1998)).  Rather, a
jury verdict is only cast "aside in 'extreme cases' where the jury has acted under passion
or prejudice or where 'the jury has palpably mistaken the rules of law.'"  Lenards, 865
NW2d at 870 (quoting Hewitt, 841 NW2d at 262).  See Waldner v. Berglund, 754 NW2d
832, 836 (S.D. 2008) ("If the jury's verdict can be explained with reference to the
evidence rather than by jury passion, prejudice, or mistake of law, the verdict should be
affirmed.'") (quoting Itzen v. Wilsey, 440 NW2d 312, 314 (S.D. 1989)).  Finally, it bears
noting that this Court "'is not free to reweigh the evidence or gauge the credibility of the
witnesses.'"  Waldner, 754 NW2d at 836–37 (quoting Miller v. Hernandez, 520 NW2d

266, 272 (S.D. 1994)).  Instead, this Court simply looks for a cognizable rationale that can explain the award of damages void of the passion or prejudice forbidden by state law.

## B. <u>Discussion</u>

Mr. Lundstrom first motions this court for a new trial on the singular question of damages, arguing there "is no reasonable basis to support a $175,000 compensatory award."  BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR A NEW TRIAL, doc. 196 at 9. The plaintiff brings the Court's attention to the evidence before the jury, concluding that there was no way in the asbence of passion or prejudice to arrive at the final $175,000 figure, thus requiring a new trial on damages.  Additionally, Lundstrom argues, the jury's compensatory award is inadequate when considering all three asserted claims charged under breach of contract: the $10,000 monthly payments (arguing these payments ought to have continued until September 2017, when settlement was reached); the $50,000 reimbursement for the truck, and a $3.4 million alleged non-discretionary bonus.  In turn, Watts Guerra – supported by the Homolka defendants – assert there was an adequate basis for the jury's award, namely centering the measure on a May 2017 invoice authored by Lundstrom.  <u>See</u> PLAINTIFF EXHIBIT 54.  The defendants also take issue with when the monthly payments were supposed to end pursuant to the oral contract.  Watts Guerra also presents alternative theories for the jury's final outcome and when they decided payments were agreed to cease.

The dispute here centers on Lundstrom's breach of contract claim, which the jury returned in his favor.  In South Dakota, "'[a]n action for breach of contract requires proof of an enforceable promise, its breach, and damages.'"  <u>Stromberger Farms, Inc. v. Johnson</u>, 942 NW2d 249, 262 (S.D. 2020) (<em>quoting</em> <u>McKie v. Huntley</u>, 620 NW2d 599, 603 (S.D. 2000)).  The measure of damages "'is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.'"  <u>Wright v. Temple</u>, 956 NW2d 436, 449 (S.D. 2021) (<em>quoting</em> SDCL 21-2-1).  <u>See also Stern Oil Co., Inc. v. Brown</u>, 908 NW2d 144, 151 (S.D. 2018) ("This Court has stated that 'the ultimate purpose behind allowance of damages for breach of contract is to place the injured party

in the position he or she would have occupied if the contract had been performed, or to 'make the injured party whole.'") (*quoting* Lamar Advert. of S.D., Inc. v. Heavy Constructors, Inc., 745 NW2d 371, 376 (S.D. 2008)). Here, the dispute centers on the third prong: after establishing that Mr. Homolka, an agent of Daniel M. Homolka, P.A. and Watts Guerra, LLP, did in fact breach an enforceable promise to Mr. Lundstrom, what would the appropriate compensatory damages be? The jury deliberated and provided an answer: $175,000.

It is no simple feat to delve into the mind of a jury and understand how they arrived at a verdict. But what appears crucial to this matter, when looking for the rational route to a $175,000 compensatory award, is an invoice Mr. Lundstrom emailed to Mr. Homolka on May 20, 2017. See PLAINTIFF'S EXHIBITS 53, 54. In the message, Lundstrom asked Homolka for "wires, receipts and expenses to date." PLAINTIFF'S EXHIBIT 53. The invoice, Exhibit 54, totals requests for funds pertaining to: advertising expenses/receipts, media (the monthly $10,000 payments for October–December 2015 as well as "year end labor & travel"), web-leasing for 2016, web-leasing for January–May 2017, and the truck reimbursement. While the invoice is not a model of clarity for accounting, the statement is clear that Lundstrom is seeking reimbursement for certain expenses, payment for the web leasing, as well as the $50,000 for the truck that he purchased. Ultimately, Lundstrom totals $264,500 owed from the October–December 2015 web leasing plus year end labor & travel, web leasing for 2016, and web leasing for January–May 2017, as well as the truck. Lundstrom then subtracts from what he is owed the difference between "wires" and "advertising receipts," which totals $89,375. Accordingly, Lundstrom claimed payment of $175,125 (the difference between $264,500 and $89,375), nearly identical to the ultimate jury measure of damages. It is not a leap of the imagination to logically conclude this invoice as the anchor for the jury's verdict, as the defendants now argue before this Court.

The jury heard conflicting testimony. These eight men and women were presented with exhibits painting different pictures of the facts and arguments presented by the parties. One crucial question was *when* the monthly $10,000 payments were to end: in

May 2017 (when this specific invoice was authored), a time when Watts Guerra and Homolka defendants asserted "all marketing efforts had ended," or alternatively not until settlement, in September 2017.  WATTS DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR NEW TRIAL, doc. 199 at 9.  With the jury likely centering its award of damages, not stripped of reason but rather anchored by the evidence, on this exhibit, it appears they found for the former.  And in this verdict, the jury likely found the three liable defendants not only breached their oral contract for the web-leasing payments, but also in their dereliction to reimburse the plaintiff for his truck.  But, Lundstrom points out, this $175,000 figure cannot sum up the three different buckets of compensatory damages, and thus "the numbers just do not add up."  BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR A NEW TRIAL, doc. 196 at 12.  True, these numbers do not comport with a verdict fully in Lundstrom's favor.  That, however, does not rob the verdict of its reasonable basis.

Lundstrom rightly points this Court's attention to Jury Instruction 10, which charged the jury with its duty on finding for an asserted breach of contract. See JURY INSTRUCTION 10, doc. 165 at 11.  But the instruction warrants a second look; it states "Plaintiff has asserted claims against all of the defendants for breach of contract. Plaintiff claims defendant breached a contract to (1) pay him a $3.4 million bonus, (2) to reimburse him for the cost of a pickup truck, and (3) to pay him $10,000 per month through the end of the Syngenta litigation." Id.  The plaintiff is undoubtedly right that the jury clearly did not award him compensatory damages on *all* three prongs of recovery. Specifically, it is leaps and bounds from the alleged $3.4 million non-discretionary bonus.  Neither this jury instruction, nor the special verdict form, demanded an all-or-nothing approach: either defendants breached an oral contract for all three assertions or some or none.  Rather, the jury likely found more persuasive defendants' testimony and evidence that any bonus tied to acquiring six million acres for the plaintiff class was simply discretionary and nothing more.  And, as this Court informed the jury in Instruction 14, "[i]f and when the payment of any bonus is *discretionary*, a person has no legally enforceable claim to receive a bonus." Id. at 15 (emphasis added).  So, rather than

buoyed by passion and prejudice, the jury likely found the three culpable defendants did breach their oral contract with Mr. Lundstrom, but only regarding the truck reimbursement and the monthly web-leasing payments, but not for as long as asserted by the plaintiff. True, "[n]o quantification of non-economic damages was required." BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR A NEW TRIAL, doc. 196 at 11. But that does not mean the jury found the plaintiff entitled to all the damages presented at trial, whether it be an alleged non-discretionary bonus or the extent of the monthly web-leasing payments.

Defendants have presented alternative theories for how the jury landed on the $175,000 mark, such as possible "padding" of his invoices, or alternatively that there was in fact a non-discretionary bonus, but for a markedly lower amount. Because the Court finds the jury likely reached their reasonable decision on the reasons stated above and centered its deliberations on evidence rather than untoward passion or prejudice, these additional theories are moot. See Waldner v. Berglund, 754 NW2d 832, 836 (S.D. 2008).

There is a basis rooted in evidence here to support the jury's verdict, even if it was not to the extent Lundstrom wishes. The May 2017 invoice offers ample support for the jury's measure of damages: Lundstrom ought to be owed compensatory damages for the truck as well as monthly payments until the end of his actual work, as testified to by Mr. Watts and Mr. Homolka. To be sure, the plaintiff disagrees with this decision of the jury, and he presents ample evidence for a more generous measure of damages that another jury may have found compelling. But at trial Lundstrom faced contradictory testimony to his own offered by defendants presenting alternative theories of damages, from when monthly payments were agreed to end to accusations of "padding the bills." Simply because Lundstrom advocated for a longer duration of monthly payments, or a different calculation of damages, does not make it so. The jury deliberated and found an appropriate basis for its ultimate verdict void of "mere speculation," a verdict that is rooted in the evidence. Kressly v. Theberge, 112 NW2d 232, 233 (S.D. 1961) (citing Peters v. Hoisington, 37 NW2d 410 (S.D. 1949)). See ISG, Corp. v. PLE, Inc., 917 NW2d 23, 32 (S.D. 2018) (holding that damages are only speculative "when the *fact* of

10

damages is uncertain," *not* when there remains "uncertainty over the *amount* of damages.") (emphases in original) (*quoting* Bailey v. Duling, 827 NW2d 3511, 363 (S.D. 2013)). Accordingly, the Court will not toss aside the jury's verdict and invade its proper province within our judicial system.

## III.   WHETHER NEW TRIAL ON ALL ISSUES IS REQUIRED

### A. Legal Standard

"If the district court finds that the jury reached a compromise verdict, the court should grant a new trial." Boesing v. Spiess, 540 F.3d 886, 889 (8th Cir. 2008). Standards for a new trial on grounds of a compromise verdict differ from the previously articulated requirements for a new trial solely on damages. See Bavlsik v. Gen. Motors, LLC, 870 F.3d 800, 809 (8th Cir. 2017) ("While it is true a retrial on only damages is sometimes proper, it is inappropriate 'where there is good reason to believe that the inadequacy of the damages awarded was induced by unsatisfactory proof of liability and was a compromise.'") (*quoting* Haug v. Grimm, 251 F.2d 523, 527–28 (8th Cir. 1958)). Indicia of compromise verdicts may be found "'when the jury, unable to agree on the issue of liability, compromises that disagreement by awarding a party inadequate damages.'" Id. (*quoting* Boesing, 540 F.3d at 889). See also id. ("'[S]everal factors are often probative of whether the jurors improperly compromised, like a close question of liability, a grossly inadequate award of damages, and other circumstances such as the length of jury deliberations.'") (alteration in original) (*quoting* Boesing, 540 F.3d at 889). The "overarching consideration must be whether the record, viewed in its entirety, clearly demonstrates the compromise nature of the verdict." Boesing, 540 F.3d at 889.

### B. Discussion

Mr. Lundstrom argues in the alternative that the Court should grant a new motion for a new trial not simply on damages, but in its entirety because of concerns of a compromise verdict. The plaintiff rests on three grounds for this claim: there was a close question of liability, the jury's award was inadequate, and that the jury engaged in an odd pattern of deliberation, which, when viewing the record in its entirety, warrant a new trial. All four defendants push against plaintiff's assertions, arguing instead that "the jury

could have reasonably reduced the damages based upon the evidence and arguments of the defense." WATTS DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR NEW TRIAL, doc. 199 at 11.  Each of the three grounds are assessed in turn, and then weighed together when viewing the record in its entirety.

### 1.  *Close Question of Liability*

Lundstrom's first basis for a new trial on both liability and damages rests on a "close question of liability."  BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR A NEW TRIAL, doc. 196 at 14.  Mr. Lundstrom posits that because the jury did not need to "engage in a philosophical debate about the monetary value of a person's past, present, and future pain and suffering" such as in many tort trials, the "determination of liability would essentially pre-determine the amount of damages," when considering the "specific allegations and denials made by the parties."  Id.  As this Court sat through the trial, it can with confidence assert that this matter was no simple contract dispute where a finding of liability for a breach inherently takes the jury to a singular financial figure.  Rather, there were a myriad of factors pressed upon the jury to consider: was there in fact a beach?  If so, which of the three (if not all) assertions for breach of contract are the three culpable defendants subject to liability?  For whom was Mr. Homolka an agent?

As the Court has previously laid out, *supra* II.B., neither the jury instructions nor the special verdict form demanded an all-or-nothing approach to a finding of liability: simply because the jury found the Homolka defendants and Watts Guerra liable for *a* breach of contract does not infer they are liable for *all* bases for breach presented by Lundstrom.  It is entirely rational that the jury found no close question of liability on whether Mr. Lundstrom was owed reimbursement for a pickup truck, as well as web-leasing payments up to a certain point, while also finding it not a close call that Homolka defendants and Watts Guerra are *not* liable for an alleged non-discretionary bonus.  Plaintiff's brief assertion of a close question of liability without ample explanation does not push this matter more in favor of a new trial.

### 2. *Whether Jury's Compensatory Award was Inadequate*

Next, plaintiff argues that the jury's verdict was simply inadequate for a finding of liability based on the evidence before them. Lundstrom centers this argument on the assertion "the award does not mathematically correlate" for a finding of culpability on the part of the three liable defendants. But, the defendants argue, simply because the verdict was not in the realm of millions, but rather hundreds of thousands, does not make it "grossly inadequate." BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR A NEW TRIAL, doc. 196 at 14. This Court will not rehash its prior analysis on how a construction supports the jury verdict, see *supra* II.B. Cf. Zahn v. Musick, 605 NW2d 823, 830 (S.D. 2000) ("'[I]f a verdict is susceptible to more than one construction, the construction which sustains the verdict must be applied.'") (*quoting* Morrison v. Mineral Palace, 576 NW2d 869, 872 (S.D. 1998)). Because the jury heard conflicting testimony on whether the $3.4 million bonus was discretionary, when the web-leasing payments were to end, the reimbursement of the truck, as well as accusations of padding the bills, the jury was within its province to believe some of Lundstrom's evidence and find the $175,000 award adequate for those breaches of contract that did occur, measured against how long any breach may have lasted.

"'[I]nsufficient damages alone [] do not establish a compromise verdict.'" Bavlsik v. Gen. Motors, LLC, 870 F.3d 800, 810 (8th Cir. 2017) (*quoting* Reider v. Philip Morris USA, Inc., 793 F.3d 1254, 1260 (11th Cir. 2015)). While Lundstrom presents other evidence in addition to concerns about inadequate compensation, his assertions on inadequate damages remain unpersuasive. The jury strayed far from Lundstrom's formula for computing damages, but that does not mean they abandoned their rationality when turning to a verdict of $175,000.

### 3. *Whether There was Odd Pattern of Jury Deliberation*

Finally, Lundstrom argues that the pattern of deliberation, namely the arrival at a unanimous verdict after a note instructing the Court that unanimity could not be reached, as well as the threat of looming inclement weather, present an odd chronology of events.

The plaintiff correctly notes that an "odd pattern of jury deliberations" can indicate concerns of a compromise verdict. Id. Lundstrom's argument rests on a *per curiam* opinion from the United States Court of Appeals for the Tenth Circuit, Skinner v. Total Petroleum, Inc., 859 F.2d 1439 (10th Cir. 1988) (*per curiam*), *superseded by statute on other grounds*, parsed by the Eighth Circuit. See id. at 810–11. In Skinner, a similar series of events transpired as here. The Skinner Court held – with sparse analysis – that the trial court erred by denying the plaintiff's motion for a new trial, when faced with "[t]he jury's sudden arrival at unanimity, when just a few hours before it was still struggling with an apparently close issue of liability." Skinner v. Total Petroleum, Inc., 859 F.2d 1439, 1446 (10th Cir. 1988) (*per curiam*), *superseded by statute on other grounds*. However, this was not all that apparently led the Tenth Circuit to deem a new trial necessary: unlike here, in Skinner the district court also appeared to have presented the plaintiff with "double recovery" by seemingly disregarding the jury's award of backpay pursuant to 42 U.S.C. § 1981 when determining the applicable array of damages under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), an action that "was in violation of the Seventh Amendment." Id. at 1445. Accordingly, the Skinner *per curiam* held, the "sudden arrival at unanimity" alongside the district court's error on "awarding substantially greater damages in its Title VII" verdict, warranted the need for a new trial. Id. at 1446.

In Bavlsik v. General Motors, LLC, the Eighth Circuit analyzed Skinner without deciding what this Circuit would do under an identical set of facts. General Motors sought to compare their litigation with Skinner, but the Bavlsik Court made bare the stark differences between the two matters. In Skinner, the Bavlsik Court noted, the focus was on the (1) jury "ask[ing] to see testimony relating solely to the issue of liability;" followed by (2) the "jury explicitly 'inform[ing] the court that it was unable to reach a unanimous decision;" (3) the trial court instructing the jury "to continue its effort;" which (4) ultimately led a short time later to a unanimous verdict." Bavlsik v. Gen. Motors, LLC, 870 F.3d 800, 810 (8th Cir. 2017) (internal quotations omitted). But the Eighth Circuit was clear: "[t]hose are not the facts here." Id. at 811. The Balsvik jury

deliberated for four hours.  In their deliberation, the jury sent a note to the trial court inquiring whether the plaintiff would receive the stipulated level of past medical expenses, "regardless of our decision." Id. at 810.  The Balsvik Court proceeded to distinguish the facts before the jury below and in Skinner, while noting that "the jury's question could indicate a struggle with liability, [but] it could also be read as a request for clarification on what the jury needed to account for in deciding damages or whether the jury could add to or reduce the stipulated number if they saw fit to do so." Id. at 811. With more than one possible reason for the jury's purportedly odd pattern of deliberations, the Balsvik court elected to preserve the sanctity of the jury verdict, which must be done here as well.

The Eighth Circuit did not state how they would rule on Skinner if the same set of facts were before it.  Regardless, Lundstrom's arguments concerning an unusual pattern of jury deliberations remain unpersuasive to tilt in favor of a new trial which are readily distinguishable from the Skinner *per curiam*.  The jury here deliberated for approximately eight hours, posing two questions to the Court.  First, the jury inquired about an exhibit they could not locate, concerning issues of liability for the $10,000 web leasing payments.  Counsel all agreed it was likely Exhibit 413, which was provided again to the jury.  But, the jury came back to the Court noting it was not Exhibit 413, insisting it was something else, possibly arising during the testimony of Mr. Rob Roos. The second and last question from the jury stated "Sir, We can not come to a unanimous decision.  It has been said . . . you can't change my mind.  What happens next?" JURY QUESTION (II), doc. 172.  This Court proceeded by asking the jury whether they are "able to reach a unanimous verdict on any issue of the issues or are you deadlocked on all issues dealing with liability?" COURT'S RESPONSE TO JURY QUESTION, Doc. 173. Instead of a response to the Court's inquiry, the jury returned less than two hours later with its unanimous verdict.

Like in Bavlsik, this Court respects the jury's long deliberations when faced with competing rationales for its questions and ultimate unanimous verdict.  Even if this Court "shares [Lundstrom's] confusion about how the jury reached the conclusion it did," it

does not find disturbing the province of the jury warranted in this matter.  Bavlsik v. Gen.
Motors, LLC, 870 F.3d 800, 811 (8th Cir. 2017).  True, a juror appears to have noted his
or her mind could not be changed.  But this Court cannot decipher if this was uttered in
the heat of debate among differing interpretations of the evidence, before a mutual –
unanimous – understanding was found.  It was apparent to this Court that this jury took
their solemn duty seriously, evidenced by their note indicating a dogged examination of
the evidence.  And through this examination of the countless exhibits before them, minds
were likely changed as a unanimous verdict – and measure of damages – was calibrated
by Lundstrom's peers without pursuing the path of a compromise verdict.  This would
not be the first, and surely not the last, jury where hyperboles were spoken in the confines
of deliberations when tasked with judging the culpability of peers.  In another sister
circuit opinion cited favorably in Bavlsik: "[T]here is . . . a settled hostility toward
[finding] 'compromise' verdicts."  Id. at 810 (alterations in original) (quoting Nichols v.
Cadle Co., 139 F.3d 59, 63 (1st Cir. 1998)).  Without further evidence of such actions
here, this Court respects the decision of the jury.[4]

## IV.   CONCLUSION

"It is always a mystery as to how a jury arrives at a verdict."  Fluharty v. Midland
Nat'l Life Ins. Co., 275 NW2d 347, 350 (S.D. 1979) (Henderson, J., concurring
specially).  But absent the requisite showing, the jury's verdict is owed "'significant
deference.'"  Excel Underground, Inc. v. Brant Lake Sanitary Dist., 941 NW2d 791, 804
(S.D. 2020) (quoting Carpenter v. City of Belle Fourche, 609 NW2d 751, 756 (S.D.
2005)).  This matter does not rise to the high bar of "extreme cases" to warrant tossing
aside the careful deliberation of Mr. Lundstrom's peers.  Id.  The jury was not "'palpably
mistaken [as to] the rules of law.'"  C & W Enters., Inc. v. City of Sioux Falls, 635

---

[4] Plaintiff also briefly notes that the jury could have been pressured to prematurely arrive at a verdict because of
approaching inclement weather.  Residents of the Northern Division are well-accustomed to the oftentimes harsh
weather inflicted on Aberdeen and neighboring communities.  Mr. Lundstrom rightly notes that "the jurors were not
held over or instructed to deliberate past a point of comfort."  BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR A NEW
TRIAL, doc. 196 at 16 n.3.  The Court does not find merit in concerns of a compromise verdict because the jury was
eager to embark on their weekend, especially when no instruction or warning was presented that deliberations would
continue on a Saturday or Sunday.

NW2d 752, 759 (S.D. 2001) (*quoting* LDL Cattle Co., Inc. v. Guetter, 544 NW2d 523, 526–27 (S.D. 1996)). Rather, they found a measure of damages of $175,000 to be appropriate based on the evidence before them, making judgments as to those testifying and assessing the weight presented by both parties. Thus, the province of the jury should not be disturbed, and the verdict must stand.

IT IS HEREBY ORDERED that plaintiff Lowell Lundstrom, Jr.'s motion for a new trial on damages, and in the alternative, a new trial in its entirety, Doc. 195, is denied.

DATED this 12th day of February, 2022.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

17