UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| LOWELL LUNDSTROM, JR., | 1:19-CV-01006-CBK |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| DANIEL M. HOMOLKA, P.A., DANIEL M. HOMOLKA, AND WATTS GUERRA LLP, | |
| Defendants. | |

Defendant Watts Guerra LLP ("defendant") renewed its motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) on December 22, 2021. Doc. 197. Defendant argues that (1) because plaintiff Lundstrom ("plaintiff") did not plead a theory of agency liability in his Complaint, it was not a proper theory of liability to be considered by the jury; and (2) that neither actual nor ostensible agency can bind Watts Guerra for the broken promises made by Mr. Daniel Homolka that are at the crux of the oral breach of contract in this matter, thus requiring a judgment as a matter of law against the decision of the jury. Mr. Lundstrom filed his response brief on January 12, 2022, doc. 201, which Watts Guerra replied to on January 26, 2022, doc. 203. This matter, and the end of this litigation before the Court, is ripe for adjudication.

## I.    BACKGROUND

The issues in this case were many. For brevity's sake, this Court discusses those facts most relevant to this motion. At the heart of this dispute is another bout of litigation, the multi-district litigation ("MDL") concerning Syngenta and its 2011 decision to commercialize genetically modified corn seed in the absence of Chinese approval to import corn with the modified trait, causing corn prices to drop dramatically

in the United States.  See In re Syngenta AG MIR162 Corn Litig., 65 F. Supp. 3d 1401

(J.P.M.L. 2014).  The Judicial Panel on Multistate Litigation condensed the flurry of suits

around the country into the District Court for the District of Kansas.  But that did not stop

Syngenta-related litigation elsewhere.

Watts Guerra LLP and Mikal Watts ("Watts defendants"), lawyers with a focus on

mass tort litigation, decided mass tort lawsuits against Syngenta would be more

advantageous than taking part in the MDL, and proceeded in finding potential plaintiffs

elsewhere.  These other lawsuits were filed in Minnesota state court, where Syngenta's

North American seed business is based.  The Syngenta MDL rejected removing these

state proceedings into the Kansas-based federal proceedings.  Instead, these state suits

were consolidated in Hennepin County, Minnesota.  Watts defendants would eventually

file nearly 60,000 suits in state court against Syngenta.

On December 7, 2018, the MDL Court certified a settlement class and approved a

global settlement of claims against Syngenta, including claims that had been pending in

the MDL, in the consolidated proceeding in Minnesota state court, and in federal court in

Illinois.  In re Syngenta AG MIR 162 Corn Litig., 357 F. Supp. 3d 1094 (D. Kan. 2018).

The litigation was settled for $1.5 billion.

As part of its project to market the Syngenta litigation, the Watts defendants

contacted hundreds of attorneys in many states, entering into agreements to act as co-

counsel on behalf of the affected farmers and grain shippers, agreeing to split attorneys'

fees.  The attorneys orchestrated town hall meetings where interested plaintiffs could

learn about the litigation and sign contingency fee agreements with the Watts defendants

and local counsel.  One such local law firm with whom the Watts defendants entered into

a joint representation agreement was the firm Daniel M. Homolka, P.A.

In November 2014, the Watts defendants and Daniel M. Homolka, P.A. and Mr.

Daniel Homolka ("Homolka defendants") entered into a fee-sharing agreement where

they agreed to share attorneys' fees recovered on behalf of any farmer who agreed to

participate in litigation against Syngenta and hire the Watts and Homolka defendants as

their attorneys.  Homolka in turn contacted attorneys James Hovland and Dan Rasmus,

2

inviting them to participate in the project.  In December 2014, Rasmus contacted Lundstrom to see if he would be interested in helping to market the Syngenta corn litigation project to farmers.  Lundstrom, a farmer, also had marketing experience.

On December 15, 2014, Lundstrom, Rasmus, Hovland, Homolka, and Hector Eloy Guerra met in a law office in Minnesota to discuss enlisting Lundstrom to assist in marketing the Syngenta corn litigation.  Lundstrom alleged that Homolka asked Lundstrom how much money he would require per month to free him up to work on the project.  Plaintiff also alleged that Homolka agreed to pay Lundstrom $10,000 per month "through the end of the project," that is, until the litigation was dismissed or settled, to lease the web site LostCornIncome.com and for Lundstrom's services in brokering and placing media on the site.  The question of when these web-leasing payments were agreed to end were heatedly debated in the November 2021 jury trial and a centerpiece of this litigation.

Plaintiff also claims that he agreed to engage in a host of other marketing related activities in exchange for further compensation.  In addition to establishing and maintaining a web domain (lostcornincome.com), plaintiff claims he produced a 30-minute-long infomercial ("LOST CORN INCOME: Special Report"), arranged and managed a toll-free telephone number for prospective clients to call, managed all media buys (for formats including radio, newspapers, and television), prepared fact sheets to give prospective agricultural clients, and prepared budgets for all of the above.  Plaintiff also participated in town hall meetings used to solicit and attract Syngenta litigation clients.

In addition to the question of how much Lundstrom was owed for these web-leasing payments, namely, when were they agreed to cease, two other promises were alleged to have been made.  Plaintiff asserted that a promise was made by Mr. Homolka that he would be reimbursed for his traveling to participate in these town hall meetings with $50,000 for a new truck.  Finally, and most importantly to Lundstrom, he argued before this Court and a jury of his peers that defendant Homolka promised him a $3.4 million bonus if he could sign up plaintiff farms whose claims totaled six million acres,

i.e., that this bonus was non-discretionary. The theory presented by Lundstrom was that he was told by Homolka that if he accepted less money monthly "up front," he would receive a higher bonus at the end of the project. Whether this promise of a multi-million-dollar bonus existed and was non-discretionary posed a critical question at trial. Despite the serious financial stakes at hand, no written agreement was ever drafted, because of purported concerns by defendants about fee-sharing between the defendants and Lundstrom, a non-lawyer. Without such an agreement on paper, the oral contract made by Homolka and what exactly it entailed, was the crux of this litigation.

On November 12, 2021, a jury of eight found that Daniel M. Homolka P.A and Watts Guerra LLP were liable to the plaintiff for a breach of contract made by Mr. Homolka. However, the jury did *not* find that the fourth defendant, Mikal Watts, was culpable because Mr. Homolka was not acting as agent of Watts, but rather only Watts' limited liability partnership. The jury also did not find that Mr. Homolka – and thus, any of the defendants – had fraudulently induced Mr. Lundstrom. Accordingly, the jury awarded Lundstrom $175,000 in compensatory damages and decided that he was not entitled to prejudgment interest. The Court entered an amended judgment in favor of Mr. Lundstrom against defendants Daniel M. Homolka, P.A. and Watts Guerra LLP jointly and severally.[1]

The critical inquiry in this Memorandum and Opinion is first, whether this theory of agency liability was properly before the jury, and second, whether Watts Guerra can be bound by the broken promises made by Mr. Homolka, under either an actual or ostensible agency theory. To invade the province of the jury should only be done in the rarest of occasions. This case does not rise to the high bar to disrupt the place of the jury in our civil justice system.

---

[1] Because the jury found that Mr. Homolka was acting as an agent for Daniel M. Homolka, P.A., (a professional association), only the professional association is liable for the acts of its agent, i.e., Mr. Homolka, not the individual in his personal capacity.

## II.   WHETHER AGENCY THEORY LIABILITY WAS PROPERLY HEARD BY JURY

Watts Guerra argues that this Court should not even entertain theories of agency liability because Lundstrom failed to plead such a theory in his Complaint. See FED. R. CIV. P. 8(a)(2) (requiring plaintiff to include "a short and plain statement of the claim showing that the pleader is entitled to relief."). In turn, plaintiff contends the matter was tried with the explicit or implicit content of the defendant, thus satisfying Federal Rule of Civil Procedure 15(b)(2)'s exception to the general requirement of pleading all theories in the party's Complaint. Rule 15(b)(2) states:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue

"The goal of Rule 15(b) is to promote the objective of deciding cases on the merits rather than on the relative pleading skills of counsel." Am. Family Mut. Ins. Co. v. Hollander, 705 F.3d 339, 348 (8th Cir. 2013). See also Baker v. John Morrell & Co., 266 F. Supp. 2d 909, 927 (N.D. Iowa 2003) aff'd, 382 F.3d 816 (8th Cir. 2004) ("The intent of Rule 15(b) is to 'provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'") (quoting Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 456 (10th Cir. 1982)). Here, the question is whether, within the liberal construction of the Federal Rules favoring all relevant claims to be put forward in one bout of litigation, this theory of liability may stand under Rule 15(b)(2). See Standard Title. Ins. Co. v. Roberts, 349 F.2d 613, 622 (8th Cir. 1965) ("The federal courts have generally and consistently recognized that, as a general rule, amendments under Rule 15 should be allowed with liberality."). The United States Court of Appeals for the Eighth Circuit has identified two steps necessary to allow such an amendment to the pleadings during or after trial on grounds of implied consent: (1) did the "'parties have [] actual notice of an unpleaded issue;" and (2) have they "'been given an adequate opportunity to cure any surprise resulting from the change in the pleadings?'" Dunne v. Libbra, 448

F.3d 1024, 1030 (8th Cir. 2006) (*quoting* Garner v. Mo. Dept. of Mental Health, 439 F.3d 958, 960 (8th Cir. 2006)). See also Am. Family Mut. Ins. Co., 705 F.3d at 348 ("[W]e have held a party will be deemed to have acquiesced in trying an unpleaded issue when the issue is 'not inconsistent with' the position taken by the non-moving party earlier in the proceedings.'") (*quoting* Baker, 382 F.3d at 831).

First, Watts Guerra had "actual notice" of this unpleaded issue. True, Lundstrom would have been wise to simply plead agency theory in his original Complaint, but subsequent events paved way for this theory of liability to stand. Lundstrom first raised an agency theory of liability for Watts Guerra in his memorandum in opposition to the defendant's motion for summary judgment, filed nearly six months before the ultimate jury trial. See Doc. 94 at 21–23. Watts Guerra accordingly resisted the plaintiff's theory of agency liability in its reply brief on June 3, 2021. See doc. 104 at 13–15. And in its Memorandum and Order addressing the varying claims on summary judgment, this Court specifically addressed agency theories of liability. See doc. 121 at 11–12. Realizing that this agency theory was a heated dispute in this matter, Watts Guerra's own proposed jury instructions offered explanations of a purported agency relationship. See doc. 133 at 37–42. Clearly the defendant had adequate notice that such a theory would be presented at trial.

Next, Watts Guerra had "'an adequate opportunity to cure any surprises resulting from the change in the pleadings.'" Brand v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 934 F.3d 799, 803 (8th Cir. 2019) (*quoting* Cook v. City of Bella Villa, 582 F.3d 840, 852 (8th Cir. 2009)). The defendant had nearly six months from being first presented with this theory of agency liability before ultimately presenting its case before the jury in November 2021. Watts Guerra was represented by well-seasoned and well-respected counsel more than capable of attacking this theory of liability.[2] The defendant made a

---

[2] Further, the ultimate disposition of the jury showed counsel *was* partially successful in contesting the question of agency liability at trial. Daniel Homolka was found *not* to be an agent of Mikal Watts, evidencing that the jury accepted part of counsel's arguments on questions of agency liability.

forceful case against agency liability in its reply brief to its motion for summary judgment, as well as in front of the jury.

Finally, this is buoyed by the "liberal backdrop" of the Federal Rules of Civil Procedure. See generally Popp Telcom v. Am. Sharecom, Inc., 210 F.3d 928, 943 (8th Cir. 2000) (noting that federal courts have a "liberal viewpoint towards leave to amend," which "should normally be granted absent good reason for a denial.")  Rule 15(b) stands so that piecemeal litigation may be avoided. See Baker v. John Morrell & Co., 266 F. Supp. 2d 909, 927 (N.D. Iowa 2003) aff'd, 382 F.3d 816 (8th Cir. 2004) ("The intent of Rule 15(b) is 'to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'") (quoting Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 456 (10th Cir. 1982)).  To reject a possible theory of agency liability when all parties have briefed and argued the issue would be to allow the "tyranny of formalism" to reign over the litigated substance of this case.  Wright & Miller, § 1491, AMENDMENTS TO CONFORM TO THE EVIDENCE – IN GENERAL, (3d ed.).  Because Watts Guerra had actual notice of Lundstrom's theory of agency liability and adequate notice to respond (an opportunity they forcefully pursued), the theory was properly permitted under Rule 15(b).

### III.   WHETHER WATTS GUERRA CAN BE FOUND CULPABLE AS MATTER OF LAW ON AGENCY THEORY OF LIABILITY

#### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 50, a court should render judgment as a matter of law "'when no reasonable jury could have found for the nonmoving party.'" Monohon v. BNSF Ry. Co., 17 F.4th 773, 780 (8th Cir. 2021) (quoting S. Wine & Spirits of Nev. v. Mountain Valley Spring Co., 646 F.3d 526, 533 (8th Cir. 2011)).  Judgment as a matter of law is appropriate "'after a party has been fully heard on an issue'" so that the Court can "'enter judgment accordingly if a reasonable jury could not find in that party's favor.'" Jacobson Warehouse Co., Inc. v. Schnuck Mkts., Inc., 13 F.4th 659, 674 (8th Cir. 2021) (quoting Adeli v. Silverstar Auto, Inc., 960 F.3d 452, 458 (8th Cir. 2020)).  Like on considering motions for summary judgment, this Court must assess whether the

evidence is "'so one-sided that one party must prevail as a matter of law.'" Adeli, 960 F.3d at 458 (*quoting* White v. Union Pac. R.R. Co., 867 F.3d 997, 1000 (8th Cir. 2017)). It bears emphasizing that "'the law places a high standard on overturning a jury verdict because of the danger that the jury's rightful province will be invaded when judgment as a matter of law is misused.'" Washington v. Denney, 900 F.3d 549, 558 (8th Cir. 2018) (*quoting* Bavlsik v. Gen. Motors, LLC, 870 F.3d 800, 805 (8th Cir. 2017)).  When deciding a motion for judgment as a matter of law, this Court must:

> (1) consider the evidence in the light most favorable to the prevailing party, (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party, (3) assume as proved all facts that the prevailing party's evidence tended to prove, and (4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved.

Ryan Data Exchange, Ltd. v. Graco, Inc., 913 F.3d 726, 732–33 (8th Cir. 2019).  When exercising diversity jurisdiction, state law controls on motions for judgment as a matter of law. See Roberson v. AFC Enters., Inc., 602 F.3d 931, 934 (8th Cir. 2010).  After the close of evidence and the jury has rendered its verdict, a party may renew its prior motion for judgment as a matter of law. Fed. R. Civ. P. 50(b).  Defendant has properly preserved its motion for judgment as a matter of law, which is now renewed.

### B. Discussion

In South Dakota, agency is "the representation of one called the principal [Watts Guerra] by another called the agent [Dan Homolka] in dealing with third persons [Lowell Lundstrom]." SDCL 59-1-1. See Dakota Provisions, LLC v. Hillshire Brands Co., 226 F. Supp. 3d 945, 952 (D.S.D. 2016) ("'Agency is a creature of state law and, in South Dakota, is governed by both statutory and common law.'") (*quoting* Babinski Props. v. Union Ins. Co., 833 F. Supp. 2d 1145, 1150 (D.S.D. 2011)).  In discerning whether there is an agency relationship, courts look to "the relations of the parties as they exist under their agreement or acts." Kasselder v. Kapperman, 316 NW2d 628, 630 (S.D. 1982). The agency relationship can be actual or ostensible. A.P. & Sons Const. v. Johnson, 657 NW2d 292, 297 (S.D. 2003).  This Court will analyze whether either theory of liability is

8

proper in this matter against Watts Guerra under the deferential standard of review required on a Rule 50(b) motion.

1. *Whether Daniel Homolka was an Actual Agent of Watts Guerra when Making the Broken Promises*

Watts Guerra asserts that Mr. Homolka exceeded his actual authority as the law firm's agent when making the broken promises to Mr. Lundstrom. Plaintiff counters, arguing that Homolka was equipped with actual authority to bind Watts Guerra on all negotiations for Lundstrom's payment, including the promises at the core of the breach of oral contract. The question here is whether Homolka's actual agency to bind the defendant on certain expenses related to the mass tort claims lends actual authority for subsequent promises, such as reimbursement for the truck and continued web-leasing payments.

Actual agency "exists when a principal and agent expressly agree to enter into an agency relationship." Id. (*citing* Dahl v. Sittner, 429 NW2d 458, 462 (S.D. 1988)). See SDCL 59-1-4. Unlike for ostensible agency, the inquiry here is the authority created "by manifestations from the principal to the agent." Fed. Land Bank of Omaha v. Sullivan, 430 NW2d 700, 701 (S.D. 1988) (*citing* SDCL 59-3-2). Simply put, the level of inquiry is the relationship between the principal and agent without consideration of the perceptions of any third party. When an actual agency relationship exists, "the principal may be held liable for the agent's negligent or wrongful acts." Dakota Provisions, LLC v. Hillshire Brands Co., 226 F. Supp. 3d 945, 952 (D.S.D. 2016). To find the existence of an actual agency relationship, Lundstrom must prevail on all the following elements:

'(1) manifestation by the principal that the agent shall act for him, (2) the agent's acceptance of the undertaking, and (3) the understanding of the parties that the principal is to be in control of the undertaking.'

Id. (*quoting* A.P. & Sons Const. v. Johnson, 657 NW2d 292, 297 (S.D. 2003)). As the party advocating for an actual agency relationship, Mr. Lundstrom held the burden to assert such a theory of liability at trial, measured against Watts Guerra's steep burden to disrupt the jury verdict. See Kasselder v. Kapperman, 316 NW2d 628, 631 (S.D. 1982) (explaining the party asserting agency has burden of proof to "affirm[] its existence.").

See also Am. Prairie Const. Co. v. Hoich, 560 F.3d 780, 793 (8th Cir. 2009) ("South Dakota courts have held, '[i]n the law of agency, a principal will be liable for contracts made in its behalf by an agent if the agent was *authorized* to enter into the agreements.'") (emphasis in original) (*quoting* Fed. Land Bank of Omaha, 430 NW2d at 701 (S.D. 1988)).

Here, defendant readily admits that Homolka was acting as an actual agent of the law firm. However, that is not the end of the inquiry. Yes, Homolka was an agent of Watts Guerra "regarding certain expenses related to the mass tort claims," but that does not mean that *any* action Homolka pursued related to the Syngenta litigation is part of the parties' actual agency relationship. DEFENDANT WATTS GUERRA, LLP'S BRIEF SUPPORTING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, doc. 198 at 9. Lundstrom failed to provide ample evidence that Mr. Homolka was within his mutually agreed authority when making offers for a truck reimbursement, non-discretionary bonuses, or web-leasing payments stretching into 2017. No substantive evidence asserted that the defendant's representatives were in a room with Homolka and Lundstrom when Homolka made these broken promises, or offered sufficient evidence that Watts Guerra was aware of these additional promises stretching beyond the budgets defendant approved. Rather, there is not sufficient evidence for the jury to consider that Watts Guerra was approving budgetary requests after September 2015; any promise for further compensation, reimbursement, or bonus was made by Homolka without the backing of an actual agency relationship with defendant.

Watts Guerra rightly points this Court's attention to one of the South Dakota Supreme Court's principal cases on actual agency authority. In Kasselder v. Kapperman, Jerome Kapperman (the principal) authorized his agent, James Schladweiler, to pay no more than $3,000 to have his road grader's defective engine repaired. 316 NW2d 628, 629 (S.D. 1982). Kapperman was clear: the upper bounds that he would pay for the repair was $3,000. Nevertheless, agent Schladweiler had the engine repaired at a total cost of $6,441.06. Id. Because the agent only had actual authority up to $3,000, any subsequent purchase beyond this price would have exceeded Schladweiler's authority.

Accordingly, Kapperman could only be found liable for the clearly demarcated $3,000. Crucial to Kasselder, and different from this matter, is that there was no lack of ordinary care on the part of Kapperman to the third party which could provide support for an alternative ground of relief under ostensible agency theory. Because Homolka exceeded his actual authority when making promises (beyond the approved budgets) to Lundstrom, Watts Guerra cannot be found liable under such a theory. But that is not where this dispute ends.

2. *Whether There was an Ostensible Agency Relationship Between Watts Guerra and Daniel Homolka Based upon Interactions between Watts Guerra and Lowell Lundstrom, Jr.*

Ostensible authority, or agency, is "such as a principal intentionally, or by want of ordinary care, causes or allows a third person to believe the agent to possess." SDCL 59-3-3.[3] For there to be ostensible agency, "the evidence should indicate that the principal, by its representations or actions, caused a third party to believe that a person was its agent." Dakota Provisions, LLC v. Hillshire Brands Co., 226 F. Supp. 3d 945, 953 (D.S.D. 2016) (*citing* Kasselder v. Kapperman, 316 NW2d 628, 630 (S.D. 1982)). Crucially, "[o]stenisble agency for which a principal may be held liable *must be traceable* to the principal and cannot be established solely by the acts, declarations or conduct of an agent." Kasselder, 316 NW2d at 630 (emphasis added). See Dahl v. Sittner, 429 NW2d 458, 462 (S.D. 1988) ("Whether an agency relationship has in fact been created depends upon the relations of the parties as they exist under their agreement or acts.") (*citing* id. at 630).

Finally, "'[a] principal is bound by acts of his agent under ostensible authority, to those persons only who have in good faith, and without negligence'" been injured by the

---

[3] Ostensible agency is in reality, "no agency at all," but rather is "in reality based entirely upon an estoppel." Hartford Accident & Indem. Co. v. Bear Butte Valley Bank, 257 NW 642, 644 (S.D. 1934). As noted by a leading agency treatise cited favorably by the South Dakota Supreme Court in Dahl v. Sittner, 429 NW2d 458 (S.D. 1988): "Apparent authority is authority imposed by equity; it was jurisprudentially created to protect third parties from unauthorized acts of an apparent agent." AMERICAN JURISPRUDENCE, AGENCY, § 71 (2d Ed.). Because of similarities in analysis and oftentimes presented together with actual authority, the two matters are often grouped together under the umbrella of "agency."

11

actions or broken promises of the agent. Haberer v. Radio Shack, a Div. of Tandy Corp., 555 NW2d 606, 609 (S.D. 1996) (alteration in original) (*quoting* SDCL 59-6-3). See also Am. Prairie Const. Co. v. Hoich, 560 F.3d 780, 794 (8th Cir. 2009) ("'The third person dealing with the agent, therefore, must show not only damages resulting from his reliance on the appearance of authority, but also reasonable diligence and prudence in ascertaining the fact of the agency and the nature and extent of the agent's authority.'") (interpreting South Dakota law) (*quoting* Dahl, 429 NW2d at 462). Thus, not only must (1) Watts Guerra have caused a representation to Lundstrom that Homolka could make these broken promises and bind the defendant, but plaintiff also (2) must have not been negligent or acted in bad faith when being injured by this breach of contract. In regard to a renewed motion for judgment as a matter of law, this Court bears in mind that "'the law places a high standard on overturning a jury verdict because of the danger that the jury's rightful province will be invaded when judgment as a matter of law is used.'" Washington v. Denney, 900 F.3d 549, 558 (8th Cir. 2018) (*quoting* Bavlsik v. Gen. Motors, LLC, 870 F.3d 800, 805 (8th Cir. 2017)). Lundstrom's burden to prove that there was ostensible authority will be viewed (1) in the light most favorable to him as the prevailing party; (2) with all conflicts resolved against Watts Guerra; (3) assuming all facts that were in equipoise in the plaintiff's favor; and (4) giving the plaintiff the benefit of all favorable inferences that this Court can reasonably draw from the facts presented at trial. Ryan Data Exchange, Ltd. v. Graco, Inc., 913 F.3d 726, 732–33 (8th Cir. 2019).

     i.     *Whether There was Want of Ordinary Care on Watts Guerra's Part*

First, the Court must examine whether, under the deferential standard on a renewed motion for judgment as a matter of law, Lundstrom met his burden to assert Watts Guerra acted with want of ordinary care in its actions for plaintiff to believe Mr. Homolka could make these binding (and broken) promises. Unlike for actual agency, the critical inquiry here is the relationship between the actions and acquiescence of Watts Guerra in the presence of the third party, Lundstrom.

Challenging for Lundstrom is the limited personal interaction between him and Watts Guerra's attorney Mikal Watts. Mr. Watts did not have personal interaction with

12

Lundstrom since 2014 and 2015, several years before the series of facts that led to this litigation. Further, Watts Guerra rightly points out there was no communications from the defendant to Lundstrom asserting Homolka's ability to bind the law firm beyond the approved expenses. But that is only half the inquiry.

From the outset of their business dealings, Watts Guerra and the Homolka defendants offered patently false assertions of legal ethics rules barring them from offering a written agreement to Lundstrom. The defendants claimed they could not enter a contract with a non-attorney out of concerns of sharing legal fees with a non-lawyer like Lundstrom. But Lundstrom's asserted breaches of contract had nothing to do with the outcome of the litigation: the truck reimbursement and the web-leasing payments were in no way hinging upon the outcome of the Syngenta litigation. Further, even the purported non-discretionary bonus, as articulated by the plaintiff, had nothing to do with the ultimate settlement or verdict of the Syngenta work; instead, it was based upon signing up six million eligible acres, *not* on the ultimate disposition of the lawsuits. Watts Guerra is a sophisticated law firm, one of the most respected mass tort firms in the country; this fundamental error on informing Lundstrom of applicable legal ethics rules is the first step on the firm's path to becoming wanting in ordinary care with its subsequent dealings.[4] True, plaintiff has previously asserted that Homolka is the one who stated the arrangement could not be on paper. See PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS DANIEL M. HOMOLKA, P.A. AND DANIEL M. HOMOLKA'S MOTION FOR SUMMARY JUDGMENT, doc. 97 at 10. However, under the deferential standard of review this Court must apply on a Rule 50(b) motion, Watts Guerra's acquiescence to a non-written arrangement for Lundstrom's marketing efforts without taking corrective action

---

[4] The rules of professional conduct are as clear in South Dakota as they are in defendant's home state of Texas. See TEXAS DISCIPLINARY R. OF PROF. CONDUCT 5.04. And even if the jury did find merit in plaintiff's argument concerning the bonus (which is questionable based on the ultimate award of damages provided), that still would not be a violation of rules of professional conduct here in South Dakota or in defendant's home jurisdiction. See Reich & Binstock, LLP v. Scates, 455 SW3d 178, 182 (Tex. App. 2014) (analyzing Comment 3 to Rule 5.04, explaining that a bonus "does not constitute the sharing of legal fees if the bonus is neither based on a percentage of the law firm's profits or on a percentage of particular legal fees.") (*quoting* TEXAS DISCIPLINARY R. OF PROF. CONDUCT 5.04, CMT. 3.) Lundstrom's alleged bonus was directly tied to signing up six million eligible acres, not on the final disposition of the Syngenta litigation.

was wanting in ordinary care. See Dakota Provisions, LLC v. Hillshire Brands Co., 226 F. Supp. 3d 945, 953 (D.S.D. 2016) ("[T]he evidence should indicate that the principal, by its *representations* or actions, caused a third party to believe that a person was its agent.") (emphasis added) (*citing* Kasselder v. Kapperman, 316 NW2d 628, 630 (S.D. 1982)).

It is worth noting the inconsistent method of payment for Lundstrom's Aliant Media entity. Instead of operating under a uniform method of compensation by one specific firm, there appears to have been alternating sources of payment. For example, while in 2015 Watts Guerra signed Lundstrom's 1099-Misscelaneous Income form, Daniel M. Homolka, P.A. would pay Aliant for expenses sourced from January 2016 – December 2017. *Compare* EXHIBITS 6, 10. And under the highly deferential standard of review that this Court must apply, it must give Lundstrom the benefit of all favorable inferences, even if it would have ruled differently than the jury on questions of ostensible agency. While plaintiff wrongly argues in its opposition brief that this Court should look at "the communications between *Homolka* and others" for findings of apparent authority, instead of the actual test of representations or actions between *Watts Guerra* and Lundstrom for questions of delegating managerial authority, he nevertheless has met his burden when assessed under Rule 50's standard. BRIEF IN OPPOSITION TO WATTS DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, doc. 201 at 12–13 (emphasis added). Because Lundstrom was not paid by a single source and was instead Watts Guerra allowed the plaintiff to receive compensation from both law firms void of any written agreement. The defendants made it a cognizable question of fact whether Mr. Homolka could bind Watts Guerra on the broken promises.

Watts Guerra offers ample evidence from Lundstrom himself on who the plaintiff thought he was dealing in business. In what appears contradictory to the core of Lundstrom's case against this defendant, he emailed Mr. Rob Roos on April 23, 2016, stating "my agreement was *not with Mikal* [*Watts*] & we always knew there was the possibility of [Mr. Watts' unrelated indictment]. The verbal agreement was made between *you and I* [sic] *Dan* [*Homolka*] in the Hovland/Rasmus law office." EXHIBIT 75

(emphases added). Seven months later, paid by different sources, Lundstrom *again* made a similar assertion: when emailing Mr. Homolka he wrote "I understand all that happened with Mikal, but our deal, the one you and I made *didn't involve him* . . . It was *just you & me*." EXHIBIT 49 (emphases added) (alteration in original). While this Court finds these statements damning, it is not enough to toss aside the jury's verdict under all the facts.

   ii.  *Whether Lundstrom Acted in Good Faith and was not Negligent*

  Next, under the deferential view this Court must take on a renewed motion for judgment as a matter of law, Lundstrom put forward sufficient evidence to meet his burden that he acted in good faith and was not negligent for believing Mr. Homolka could bind Watts Guerra, viewed from the perspective of Watts Guerra's representations and actions directed at the plaintiff. When dealing with such a sophisticated law firm as Watts Guerra, a farmer with a marketing background like Mr. Lundstrom could be within the realm of reason to believe its partner professional association's principal attorney could make such binding financial promises related to the joint litigation efforts. This is especially so when measured against the assertions that any agreement could not be written due to false arguments about legal ethics and fee-splitting. Similarly, the jury could have found that Lundstrom was acting in good faith in believing Mr. Homolka could bind Watts Guerra to some of these broken promises.

  This Court cannot invade the province of the jury simply because it would have found differently on the question of ostensible agency. Rather, the Court is bound to first consider this evidence in the light most favorable to the prevailing party, Lundstrom. Letterman v. Does, 859 F.3d 1120, 1124 (8th Cir. 2017). When doing so, Watts Guerra's acquiescence for perceptions of joint managerial authority with Mr. Homolka when both would sign compensation-related documents for Lundstrom's Aliant Media, among the other evidence presented by the plaintiff at trial, could be found by the jury that there was a wanting of ordinary care, even though plaintiff made repeated contradictory assertions over email. Second, this is supported by resolving conflicts in the evidence – representations of joint managerial authority and ability to make financial contributions and promises to Lundstrom measured against plaintiff's own damning messages – in

Lundstrom's favor and recognizing he may not have been negligent in his due diligence when hampered by a lack of any written agreement. Id. The testimony and evidence presented by Lundstrom at trial could have proved this authority on the part of Mr. Homolka to bind Watts Guerra, when giving the plaintiff the benefit of all favorable inferences that can reasonably be drawn. While the evidence perhaps tilted in favor of Watts Guerra when only looking at the relationship between Watts Guerra and Lundstrom, *not* the actions or representations of Homolka himself, it was not "'so one-sided that [the defendant] must prevail as a matter of law.'" Axelson v. Watson, 999 F.3d 541, 546 (8th Cir. 2021) (*quoting* Kinserlow v. CMI Corp., 217 F.3d 1021, 1025 (8th Cir. 2000)).

## IV.   CONCLUSION

There are great risks to oral contracts. We see that "in spades" here. Over time members of the contract may remember promises – or their very existence – differently. See Int'l Auction & Appraisal, LLC v. R & M Metals, Inc., 2010 WL 4181457, at *7 (M.D. Pa. Oct. 20, 2010) (warning the danger of oral contracts and how they are "subject to both the vagaries of human recollection, and the limitations of the spoken word as a vehicle for communicating subtle, complex concepts."). This bout of litigation proves the point many times over. If Mr. Lundstrom was simply offered a written agreement from these two sophisticated law firms from the inception of this working relationship, this suit likely never would have occurred, and Watts Guerra would not have needed to devote its resources to defending this breach of contract.

While the evidence did not permit the jury to establish an actual agency relationship for Mr. Homolka to bind Watts Guerra on these broken promises, it did allow for some liability under an ostensible agency theory. This Court cannot supplant its own views for that of the jury. See Washington v. Denney, 900 F.3d 549, 558 (8th Cir. 2018) ("'[T]he law places a high standard on overturning a jury verdict because of the danger that the jury's rightful province will be invaded when judgment as a matter of law is misused.'") (*quoting* Bavlsik v. Gen. Motors, LLC, 870 F.3d 800, 805 (8th Cir. 2017)). Under the deferential standard owed to the jury's verdict on a renewed motion for

judgment as a matter of law, Lundstrom met his burden on establishing a theory of ostensible agency based upon the representations and actions of Watts Guerra directed towards him.  Accordingly, the province of the jury should not be invaded in this matter.

IT IS HEREBY ORDERED that defendant Watts Guerra LLP's renewed motion for judgment as a matter of law, Doc. 197, is denied.

DATED this _12th_ day of February, 2022.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge